**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

NETCHOICE,

                           PLAINTIFF,

    v.                                          Civil Action No. 3:25-cv-231

LIZ MURRILL, et al.,                            Judge: JWD - RLB

                           DEFENDANTS.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**THEIR MOTION TO EXCLUDE DR. ANTHONY BEAN**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iv

INTRODUCTION ..................................................................................... 1

BACKGROUND ....................................................................................... 3

LEGAL STANDARD................................................................................. 6

ARGUMENT ............................................................................................ 7

I.   THE COURT SHOULD EXCLUDE DR. ANTHONY BEAN'S TESTIMONY
     BECAUSE HIS REPORT'S AI-FABRICATIONS RENDER IT FATALLY
     UNRELIABLE. ..................................................................................... 8

     A.   The Ayorech Citation and Attributed Quotation Are Fabricated. ............... 9

     B.   The Benge Citation and Attributed Quotation Are Fabricated. ................ 10

     C.   The Corredor-Waldron Citation and Attributed Quotation Are
          Fabricated. ..................................................................................... 11

     D.   The Ferguson Citation and Attributed Quotation Are Fabricated. ........... 12

     E.   The Hancock Citation Is Fabricated. ............................................... 13

     F.   The "M. Lemahieu" Citation and Attributed Quotation Are
          Fabricated. ..................................................................................... 13

     G.   The Dong Liu Citations and Attributed Quotation Are Fabricated. .......... 14

     H.   The "R.T. Liu" Citation and Attributed Quotation Are Fabricated. ........... 15

     I.   The "Martin R." Citation Is Fabricated........................................... 17

     J.   The Parry Citation and Attributed Quotation Are Fabricated. ................ 17

     K.   The Scheeringa Citation and Attributed Quotation Are Fabricated. ......... 18

     L.   The Sewall Citation Is Fabricated. ................................................ 19

     M.   The Steinsbekk Citation and Attributed Quotations Are Fabricated. ....... 20

N.  The Sun Citation and Attributed Quotation Are Fabricated. ..................... 21

O.  The Lancet Commission Citation Is Fabricated. .......................................... 22

P.  The Social Media Experiments Meta Study Citations and Attributed Quotation Are Fabricated. ............................................................................. 22

II.  THE COURT SHOULD IMPOSE THE "STEEP" CONSEQUENCES WARRANTED FOR CITING AI-FABRICATED SOURCES AND RELYING ON AI-FABRICATED QUOTES. ........................................................................ 24

CONCLUSION.................................................................................................................... 25

CERTIFICATE OF SERVICE ......................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ............................................................................................ 7

*Gulf Coast Bank & Tr. Co. v. Great Lakes Ins. SE*,
    No. 3:23-cv-144 (M.D. La. Feb. 3, 2025), Dkt. No. 36 ........................................... 7

*Hall v. The Academy of Charter Schs.*,
    No. 2:24-CV-08630-JMW, 2025 WL 2256653
    (E.D.N.Y. Aug. 7, 2025) ..................................................................................... 7, 8

*Johnson v. Dunn*,
    No. 2:21-CV-1701-AMM, 2025 WL 2086116
    (N.D. Ala. July 23, 2025) ...................................................................................... 26

*Kohls v. Ellison*,
    No. 24-CV-3754, 2025 WL 66514
    (D. Minn. Jan. 10, 2025) ............................................................. 2, 7, 8, 9, 25, 26

*NetChoice, L.L.C. v. Fitch*,
    134 F.4th 799 (5th Cir. 2025) .............................................................................. 8, 27

*Nissho-Iwai Am. Corp. v. Kline*,
    845 F.2d 1300 (5th Cir. 1988) ................................................................................. 7

*United States v. Hayes*,
    763 F. Supp. 3d 1054 (E.D. Cal. 2025), *reconsideration denied*,
    No. 2:24-CR-0280-DJC, 2025 WL 1067323 (E.D. Cal. Apr. 9, 2025) ..................... 8

*Wadsworth v. Walmart Inc.*,
    348 F.R.D. 489 (D. Wyo. 2025) ............................................................................... 8

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ................................................................................... 7

## Other Authorities

Aaron J. Moss et. al.,
    *The Upside of Acknowledging Prejudiced Behavior*,
    104 J. Experimental Soc. Psychol. 104401 (Jan. 2023),
    t.ly/uS5uk ........................................................................................................ 19

Adriana Corredor-Waldron,
    Research,
    t.ly/mL4Ho (last visited Aug. 15, 2025) .................................................... 12

Amit Goldenberg et al.,
    *Amplification in the evaluation of multiple emotional expressions*
    *over time*, 6 Nat. Hum. Behav. 1408-16 (2022),
    t.ly/Tk3ZP ...................................................................................................... 14

Brandon Fierro,
    *Short circuit court: AI hallucinations in legal filings and how to*
    *avoid making headlines*, Reuters (Aug. 4, 2025 8:27 AM),
    t.ly/inw31 ......................................................................................................... 2

Dr. Adriana Corredor-Waldron,
    *Health Economics Review*, Articles,
    t.ly/_t9rX (last visited Aug. 15, 2025) ...................................................... 12

Dr. *Laura* Lemahieu,
    Am. Psychol. Ass'n, Search for "Lemahieu,"
    t.ly/i8aJ9 (last visited Aug. 15, 2025) ..................................................... 15

Fed. R. Evid. 702 ................................................................................................. 25

Jacquelyn Nesi et al.,
    *Social Media Use and Self-Injurious Thoughts and Behaviors:*
    *A Systematic Review and Meta-Analysis*,
    87 Clin.Psychol.Rev. 102038 (2021),
    t.ly/dNosR ...................................................................................................... 17

Jordan Edwards et. al.,
    *Is Evidence on Mental Health Service Use Among Children &*
    *Youth During the COVID-19 Pandemic Transportable Across*
    *Settings?*, 76 J. Adolesc. Health 3 at 346 (Mar.2025),
    t.ly/qfbme ....................................................................................................... 20

Julia G. Halilova et. al.,
 *Delay Discounting Predicts COVID-19 Vaccine Booster Willingness*,
 10 Cogn. Res.: Principles & Implications 1 (Jan. 23, 2025),
 t.ly/2KaNq ................................................................................................. 11

Kirsten Marchand et. al.,
 *A Scoping Review of Evidence-Based Interventions and Health-
 Related Services for Youth Who Use Nonmedical Opioids in Canada
 and the United States*, 76 J. Adolesc. Health 3 at 348 (Mar.2025),
 t.ly/xD5Q7 ................................................................................................. 20

Krista Chavez,
 *AI's Transformative Power: A Revolution in Medical Imaging*,
 NetChoice (May 20, 2025),
 t.ly/jBvda ..................................................................................................... 2

Liang-Jen Wang et. al.,
 *Gut Mycobiome Dysbiosis and Its Impact on Intestinal Permeability
 in Attention-Deficit/Hyperactivity Disorder*, 64 J. Child Psychol. &
 Psychiatry 1280 (Sept. 2023),
  https://doi.org/10.1111/jcpp.13779 ...................................................... 10

David G. Lugo-Palacios et al.,
 *Going beyond randomised controlled trials to assess treatment effect
  heterogeneity across target populations*,
 34 Health Economics 1 at 85–104 (2024),
  t.ly/_6jQM (last visited Aug. 15, 2025) ............................................... 13

Michael P. Grosz et. al.,
 *A Meta-Analytic Review of the Associations of Personality,
 Intelligence, and Physical Size with Social Status*,
 150 Psychol. Bull. 253 (Mar 2024),
  https://doi.org/10.1037/bul0000416 ...................................................... 17

Michael S. Scheeringa,
 Publications,
 t.ly/21-2m (last visited Aug. 15, 2025) ................................................ 20

Shaoling Peng et al.,
 *Activation network mapping for integration of heterogeneous
 fMRI findings*, 6 Nat. Hum. Behav. 1417-29 (2022),
 t.ly/XJ1D9 .................................................................................................. 14

Tess A. Forest, et al.,
  *Memories of Structured Input Become Increasingly Distorted Across
  Development*, 94 Child Dev. e279 (Sept./Oct. 2023),
  https://doi.org/10.1111/cdev.13940 ........................................................................ 21

Zoey Foster,
  *AI's Transformative Power: One Voice,Countless Lives Changed*,
  NetChoice (Aug. 7, 2025),
  t.ly/rRPqU ............................................................................................................. 2

Zoey Foster, *The Transformative Power of AI:*
  *A Roadmap for Safer, Smarter Commutes*, NetChoice
  (Dec.16, 2024), t.ly/jpUMl ................................................................................... 2

## INTRODUCTION

Plaintiff NetChoice's stated "mission" is "to make the Internet safe for ... free expression." Our Mission, NetChoice, t.ly/7kgu3 (last visited Aug. 15, 2025). That mission, however, must yield to basic litigation rules when NetChoice enters federal court. Regrettably, that is the reason for this motion.

NetChoice has identified just one expert, Dr. Anthony Bean, to advance its challenge to Louisiana's Secure Online Child Interaction and Age Limitation Act of 2023. NetChoice submitted Dr. Bean's expert report to Defendants, along with the original sources on which he allegedly relied. While the original sources NetChoice produced exist, the substance of Dr. Bean's report is fake. None of the 17 articles in Dr. Bean's reference list exists, and his report never cites the actual sources NetChoice provided to Defendants. More, none of the 12 quotations that Dr. Bean's report attributes to various authors and articles exists (even in the original sources provided to Defendants).

A cursory comparison between Dr. Bean's report and the disclosed original sources would have alerted NetChoice that something is amiss. In fact, just *reading* Dr. Bean's report would have done so. His reference list makes no sense, (a) citing website links that are dead or lead to entirely unrelated sources and (b) citing volume and page numbers in publications that are easily confirmed to be wrong. And his report itself is strangely formatted, not least because, well, it looks and reads like a print-out from artificial intelligence (AI).

Dr. Bean's report bears all the telltale signs of AI hallucinations: completely fabricated sources and quotations that appear to be based on a survey of real authors

1

and real sources. *See, e.g.*, Brandon Fierro, *Short circuit court: AI hallucinations in legal filings and how to avoid making headlines*, Reuters (Aug. 4, 2025 8:27 AM), t.ly/inw31. It is difficult to escape the irony of a NetChoice expert submitting an expert report based on non-existent authorities and quotations. Yet here lies NetChoice—a loud proponent of "free expression" and "AI's Transformative Power"[1]—attempting to rely on such a report and such an expert in this litigation.

The upshot is straightforward—and other courts have been down this road before on materially identical facts. Dr. Bean's reliance (under penalty of perjury) on entirely fake sources and quotations "shatters his credibility" beyond repair. *Kohls v. Ellison*, No. 24-CV-3754 (LMP/DLM), 2025 WL 66514, at *4 (D. Minn. Jan. 10, 2025). Accordingly, at a minimum, Dr. Bean's testimony must be excluded. More, NetChoice must bear the consequences of "citing to fake sources," which "imposes many harms, including 'wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few).'" *Id.* at *5 (citation omitted). As the *Kohls* court ordered, this Court should exclude Dr. Bean's testimony and prohibit NetChoice from submitting any amendment or supplement—and award the State Defendants reasonable fees and costs associated with uncovering this egregious problem and filing this motion.

---

[1] Zoey Foster, *AI's Transformative Power: One Voice, Countless Lives Changed*, NetChoice (Aug. 7, 2025), t.ly/rRPqU; Krista Chavez, *AI's Transformative Power: A Revolution in Medical Imaging*, NetChoice (May 20, 2025), t.ly/jBvda; Zoey Foster, *The Transformative Power of AI: A Roadmap for Safer, Smarter Commutes*, NetChoice (Dec. 16, 2024), t.ly/jpUMl.

## BACKGROUND

NetChoice—a D.C. non-profit trade association of internet companies—filed this lawsuit on March 18, 2025. It challenges Louisiana's Secure Online Child Interaction and Age Limitation Act of 2023 and seeks, among other things, an injunction barring enforcement of the Act against NetChoice and its members, some of the largest internet companies in the world. Compl. at 5 & n.2, 38, ECF No. 1. That day, NetChoice moved for a preliminary injunction. ECF No. 6. Before litigating that motion, however, the parties submitted—and the Court entered—a Joint Case Management Order providing for expedited fact and expert discovery followed by summary judgment briefing. ECF Nos. 24, 26.

On May 12, 2025, NetChoice identified Dr. Anthony Bean, a Fort Worth psychologist, as its sole expert. *See* Ex. A (Email 5/12/25). On July 28, 2025, it served his declaration—titled "Expert Review of the Alleged Causal Relationship Between Social Media Use and Youth Mental Health Outcomes"—together with its fourth production of documents, including the sources Dr. Bean purportedly relied on. *See* Ex. B (Email 7/28/25); Ex. C (Declaration of Anthony Bean, PhD). The State Defendants' expert reports—including a rebuttal from Dr. Jean M. Twenge—are due August 18, 2025, with expert depositions to follow. ECF No. 26.

Imagine Dr. Twenge's surprise when she began tracing Dr. Bean's work—pulling journals, running database searches, and checking DOIs[2]—only to find

---

[2] A Digital Object Identifier (DOI) is a persistent alphanumeric identifier assigned to a specific electronic work (*e.g.*, journal articles, datasets) that provides a stable, permanent link to its location on the internet, regardless of changes to the underlying URL.

herself chasing ghosts, fabricated quotations from articles that do not exist. *See* Ex. D (Declaration of Jean M. Twenge, PhD).

Dr. Bean begins his declaration with a solemn affirmation: "I, Anthony Bean, declare under penalty of perjury that the following is true and correct." Bean Decl. at A1. His report proceeds in 13 subparts (A–N, curiously missing M) with the analytical subparts (B–K) following the same formula: (1) introduce a study or article and summarize its findings; (2) present a block quotation purportedly taken from the study; and (3) opine on what the study supposedly shows in relation to this case. *See generally* Bean Decl. From those studies and articles, Dr. Bean concludes that "the best available scientific evidence does not support the claim that social media use is a primary or causal factor in widespread psychological harm among adolescents." *Id.* at L1. The report ends with a "References" section that lists each of the 17 sources on which Dr. Bean claims to have relied. *Id.* at N.

Here's the problem: The quotations and citations in Dr. Bean's report bear the hallmarks of AI fabrication—sources that do not exist and real authors alleged to have written words they never wrote. Worse still, the documents NetChoice produced with Dr. Bean's report confirm it.

Take Subpart B as an example. Dr. Bean discusses "Ferguson et al. (2024)," listed in full in his References as:

> Ferguson, C. J., et al. (2024). Social media use and mental health: A comprehensive meta-analysis. *Review of General Psychology*. Advance online publication. https://doi.org/10.1037/gen0000536

He then attributes to that work (*i.e.* "[i]n their words") one direct quotation:

> *"While some effects are statistically non-zero, they are so small as to be functionally meaningless in the real world."*

Bean Decl. at B2. Mundane enough—so it would seem.

To be sure, Christopher J. Ferguson is a psychology professor at Stetson University, and the *Review of General Psychology* is a peer reviewed journal published by the American Psychological Association. *See* Ferguson, Christopher J., Faculty Profile, Stetson Univ., t.ly/l8DyY (last visited Aug. 15, 2025); Am. Psychol. Ass'n, Review of General Psychology, t.ly/7__g6 (last visited Aug. 15, 2025). But neither Ferguson nor the *Review of General Psychology* has published an article entitled "Social media use and mental health: A comprehensive meta-analysis." Indeed, the DOI link Dr. Bean provides leads nowhere—another dead end.



That alone is troubling. But it gets worse. NetChoice produced three actual 2024 articles by Dr. Ferguson—(1) "Do Social Media Experiments Prove a Link With Mental Health: A Methodological and Meta-Analytic Review," *Psychology of Popular Media* (Ex. E), (2) "Longitudinal Associations Between Social Media Use and Mental Health Outcomes in Sample of Irish Youth: A Brief Report," *Communication Reports*

(Ex. F), and (3) "There Is No Evidence That Time Spent on Social Media Is Correlated With Adolescent Mental Health Problems: Findings From a Meta-analysis," *Professional Psychology: Research and Practice* (Ex. G). From a layman's perspective, the general thrust of *these* articles may align with Dr. Bean's substantive propositions attributed to the non-existent Dr. Ferguson article. That might suggest an honest mistake—if the quotes were real. They are not. Nowhere in any of the three articles are the words "non-zero," "real world," or "functionally meaningless." *See* Exs. E, F, G.

Far from a one-off, the pattern repeats—11 more subparts, 12 more quotations, 16 more citations. All fabricated. Accordingly, the State Defendants move to exclude his testimony.

## LEGAL STANDARD

Expert testimony must be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (citing Fed. R. Evid. 702). Thus, "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997); *see generally* Principles to be Utilized for Analyzing and Deciding Daubert Motions Before Judge John W. deGravelles, *Gulf Coast Bank & Tr. Co. v. Great Lakes Ins. SE*, No. 3:23-cv-144 (M.D. La. Feb. 3, 2025), Dkt. No. 36.

One indicium of reliability is requiring experts to sign declarations under "penalty of perjury" and verify that they are "true and correct." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (quoting 28 U.S.C. § 1746). That requirement ensures experts grasp "'the gravity of their undertaking and thereby

have a meaningful effect on truth-telling and reliability.'" *Kohls*, 2025 WL 66514, at
*4 (quoting *Acosta v. Mezcal, Inc.*, No. 17-cv-0931 (JKB), 2019 WL 2550660, at *2 (D.
Md. June 20, 2019)). In turn, courts should be able to "trust the 'indicia of
truthfulness' that declarations made under penalty of perjury carry." *Id.* (quoting
*Davenport v. Bd. of Trs. of State Ctr. Comm. Coll. Dist.*, 654 F. Supp. 2d 1073, 1083
(E.D. Cal. 2009)).

## ARGUMENT

Courts have become well-acquainted with AI hallucinations in legal work with
hundreds of documented incidents nationwide in just the past few years. *See Hall v.
The Academy of Charter Schs.*, No. 2:24-CV-08630-JMW, 2025 WL 2256653, at *4
(E.D.N.Y. Aug. 7, 2025). They occur both "when an AI database generates fake
sources of information," *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 493 (D. Wyo.
2025), and when it fabricates content for otherwise real sources, *e.g. United States v.
Hayes*, 763 F. Supp. 3d 1054, 1060 (E.D. Cal. 2025), *reconsideration denied*, No. 2:24-
CR-0280-DJC, 2025 WL 1067323 (E.D. Cal. Apr. 9, 2025). The problem is not limited
to the law—"scientific fields experience the same issue." *Wadsworth*, 348 F.R.D. at
493. But in litigation, it is "typically" confined to "cases … involving pro se litigants."
*Hall*, 2025 WL 2256653, at *5.

This example is thus an extraordinary outlier. NetChoice has made a business
model of "tak[ing] states to court." Litigation Center, NetChoice, t.ly/m-6Lq (last
visited Aug. 15, 2025); *e.g. NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 803 (5th Cir.
2025). More, its dual policy mission leaves no doubt that it understands AI inside and
out. *See, e.g.*, Artificial Intelligence, NetChoice, t.ly/a86F1 (last visited Aug. 15, 2025).

Yet after taking Louisiana to court, and when finally pressed to prove its claims against the State at summary judgment, NetChoice delivered one expert report riddled with what appears to be AI-fabricated citations and quotations.

Rare as it is, this problem is not without precedent. In *Kohls*, a court confronted an expert's fabricated "citations to two non-existent academic articles" and "a third article" that "incorrectly cited the authors." 2025 WL 66514, at *3. The fabrications here dwarf those in *Kohls*, but its reasoning is directly applicable and offers a roadmap to remedy the wrong here. The Court should exclude Dr. Bean's testimony, deny leave to amend, supplement, or extend deadlines for new experts, and award the State Defendants their reasonable fees and costs.

## I.    The Court Should Exclude Dr. Anthony Bean's Testimony Because His Report's AI-Fabrications Render It Fatally Unreliable.

Dr. Bean's reliability is shot, and the proof is overwhelming. Dr. Bean's report is built on 17 citations to sources that do not exist and 12 quotations never written by the authors he names. *See* Twenge Decl. ¶¶ 6–7. As *Kohls* recognized, the "citation to fake, AI-generated sources in his declaration" alone "shatters his credibility" beyond repair. 2025 WL 66514, at *4. That is because "when attorneys and experts abdicate their independent judgment and critical thinking skills in favor of ready-made, AI-generated answers, the quality of our legal profession and the Court's decisional process suffer." *Id.* It is thus beside the point that Dr. Bean might still "stand[] by the substantive propositions in his declaration"—"even those that are supported by fake citations." *Id.* at *3. For "even if the errors were an innocent mistake, and even if the propositions are substantively accurate, the fact remains

8

that [he] submitted a declaration made under penalty of perjury with fake citations." *Id.*

Dr. Bean's patent unreliability is better shown than told—beginning with his fabricated "Ferguson et al. (2024)" article and cascading through one false source after another. *See* Bean Decl. at N; *see also* Twenge Decl. ¶¶ 8–122.

**A. The Ayorech Citation and Attributed Quotation Are Fabricated.**

Dr. Bean leans on a source he calls "Ayorech et al. (2023)" in three subparts of his report. *See* Bean Decl. at C1–C7, K2, L3. His "References" section lists it as:

> Ayorech, Z., Allegrini, A. G., Rimfeld, K., & Plomin, R. (2023). Digital depression? Genetic confounding in the association between social media use and depressive symptoms. *Journal of Child Psychology and Psychiatry.*
> https://doi.org/10.1111/jcpp.13779

Bean Decl. at N. The source does not exist. The DOI hyperlinked in Dr. Bean's report is even more damning than the fabricated Ferguson reference: Click it and what appears is a study by Dr. Liange-Jen Wang and others on "the impact of fungal mycobiome dysbiosis and intestinal permeability on ADHD." *See* Liang-Jen Wang et al., *Gut Mycobiome Dysbiosis and Its Impact on Intestinal Permeability in Attention-Deficit/Hyperactivity Disorder*, 64 J. Child Psychol. & Psychiatry 1280 (Sept. 2023), https://doi.org/10.1111/jcpp.13779.

Nor has Dr. Ayorech—or any of her purported co-authors—written an article entitled "Digital depression? Genetic confounding in the association between social media use and depressive symptoms." *See* Ziada Ayorech (ID #1275063), CRIStin,

t.ly/tKSBg (last visited Aug. 15, 2025). No such article appears in the *Journal of Child Psychology and Psychiatry* either. *See* Twenge Decl. ¶¶ 9–10. What NetChoice actually produced was a different article that Dr. Ayorech co-authored—"Gene-environment correlations and genetic confounding underlying the association between media use and mental health"—published with *Nature.com*. *See* Ex. H. And no "Allegrini, A. G." contributed to that piece. *See id.* at 1.

The misrepresentation carries through to substance. Dr. Bean claims the "Ayorech" authors "sought to answer a critical question: Does social media use cause depression, or do other underlying factors explain the association?" Bean Decl. at C2 (emphasis removed). The real article is far more modest: It "investigates the links between explicitly negative *and* general media use and mental health in young people using multiple genetically informed approaches, with complementary strengths." Ex. H at 2. The quotation Dr. Bean attributes to "Ayorech et al."—"The association between social media use and depressive symptoms was substantially attenuated and often eliminated when controlling for genetic and shared environmental confounding[,]" Bean Decl. at C4—appears nowhere in the real article. *See* Ex. H.

**B. The Benge Citation and Attributed Quotation Are Fabricated.**

Dr. Bean also relies on a source he calls "Benge & Scullin (2025)." *See* Bean Decl. at G5. In his "References," it appears as:

Benge, J. F., & Scullin, M. K. (2025). Screen time and cognitive aging: A meta-analysis of digital media use across the lifespan. *Cognitive Research: Principles and Implications, 10(1), 22-36.*

Bean Decl. at N. That source does not exist. Volume 10, Article 1 of *Cognitive Research: Principles and Implications* is not authored by Dr. Benge or Dr. Scullin and does not address technology use or cognitive aging. Instead, it is a study that "identif[ies] delay discounting as a behavioral predictor of booster willingness that may be used to inform tailored approaches to increase booster uptake." Julia G. Halilova et al., *Delay Discounting Predicts COVID-19 Vaccine Booster Willingness*, 10 Cogn. Res.: Principles & Implications 1 (Jan. 23, 2025), t.ly/2KaNq.

The actual article that NetChoice produced alongside Dr. Bean's report is "A meta-analysis of technology use and cognitive aging" published in *Nature Human Behaviour. See* Ex. I. The quotation Dr. Bean attributes to the supposed *Cognitive Research* article—"Rather than impairing cognition, digital media—when used interactively and socially—appears to support healthy cognitive aging[,]" Bean Decl. at G7—again appears nowhere in Dr. Benge and Dr. Scullin's actual work, *see* Ex. I.

## C. The Corridor-Waldron Citation and Attributed Quotation Are Fabricated.

Dr. Bean also leans on a source he calls "Corridor-Waldron (2024)." *See* Bean Decl. at D, L5. In his "References," it appears as:

Corredor-Waldron, A. (2024). Teen mental health trends and the role of increased diagnostic access: An analysis of structural changes in reporting. *Health Economics Review, 34 (2)*, 89-103.

*See* Bean Decl. at N. The glaring problem here: *Health Economics Review* has yet to publish its 34th volume—much less an article by Dr. Adriana Corredor-Waldron. *See Health Economics Review*, Articles, t.ly/_t9rX (last visited Aug. 15, 2025); *see also*

11

Adriana Corredor-Waldron, Research, t.ly/mL4Ho (last visited Aug. 15, 2025). A similarly named journal *Health Economics*, however, *does* have a 34th volume—but its second issues spans pages 201–367. *See* 34 Health Economics 2 at 201–367 (2024), t.ly/E7l16 (last visited Aug. 15, 2025). The page range Dr. Bean identifies (89–103) is in issue *1* and is a completely unrelated article. *See* David G. Lugo-Palacios et al., *Going beyond randomised controlled trials to assess treatment effect heterogeneity across target populations*, 34 Health Economics 1 at 85–104 (2024), t.ly/_6jQM (last visited Aug. 15, 2025).

What NetChoice actually produced is a different article entirely: "To What Extent are Trends in Teen Mental Health Driven by Changes in Reporting?" by Dr. Corredor-Waldron and Dr. Janet Currie, published in *The Journal of Human Resources*. *See* Ex. J. Once again, Dr. Bean's report's direct quotation attributed to Dr. Corredor-Waldron—"Much of what appears to be an epidemic of adolescent mental illness may actually reflect an epidemic of measurement and visibility, not one of morbidity[,]" Bean Decl. at D4—appears nowhere in her work, *see* Ex. J. What's more, Dr. Bean asserts that "Corredor-Waldron (2024) points out that no credible causal mechanism directly ties social media to the sudden rise in diagnoses." Bean Decl. at D6. But that, too, is pure invention—her produced article does not mention social media once. *See* Ex. J.

## D. The Ferguson Citation and Attributed Quotation Are Fabricated.

As previewed above, Dr. Bean's lead-off source—"Ferguson et al. (2024)"—also does not exist. *See* Bean Decl. at B, K, & L. The DOI link is a dead end, and neither Dr. Ferguson nor the *Review of General Psychology* has published an article entitled

"Social Media Use and Mental Health: A Comprehensive Meta-Analysis." *See* Twenge Decl. ¶¶ 31–33. NetChoice produced three real 2024 Ferguson articles, but none contains the quotation Dr. Bean attributes to them—terms like "non-zero," "real world," and "functionally meaningless" never even appear. Exs. E, F, & G.

**E. The Hancock Citation Is Fabricated.**

Dr. Bean lists in his references an article by "Hancock, J.T.":

> Hancock, J. T., et al. (2022). No evidence of a general link between digital media use and mental health. *Nature Human Behaviour*, *6*, 1415-1423.

*See* Bean Decl. at N. Although he never actually discusses it in his report, that citation is also fictitious. While *Nature Human Behaviour* published Volume 6 in 2022, the cited page range covers two unrelated articles: Amit Goldenberg et al., *Amplification in the evaluation of multiple emotional expressions over time*, 6 Nat. Hum. Behav. 1408–16 (2022), t.ly/Tk3ZP; and Shaoling Peng et al., A*ctivation network mapping for integration of heterogeneous fMRI findings*, 6 Nat. Hum. Behav. 1417–29 (2022), t.ly/XJ1D9. The Hancock article that NetChoice actually produced is entirely different—"Social Media and Psychological Well-Being"—co-authored with Sunny Xun Liu, Mufan Luo, and Hannah Mieczkowski, and published in *The Psychology of Technology: Social Science Research in the Age of Big Data. See* Ex. K.

**F. The "M. Lemahieu" Citation and Attributed Quotation Are Fabricated.**

Dr. Bean relies on another source he calls "Lemahieu et al. (2025)." *See* Bean Decl. at F, K2, & L4. In his "References," it appears as:

> Lemahieu, M., et al. (2025). Social media interventions and well-being: A systematic review and meta-analysis of randomized experiments. *Journal of Experimental Psychology: Applied*. Advance online publication.

*See* Bean Decl. at N. The absence of any pin cite is telling: This source again does not exist. And the article NetChoice produced is not by "M. Lemahieu" at all, *see* Ex. K—it's by Dr. *Laura* Lemahieu, who has never published in the *Journal of Experimental Psychology: Applied*. *See* Am. Psychol. Ass'n, Search for "Lemahieu," t.ly/i8aJ9 (last visited Aug. 15, 2025). Nevertheless, Dr. Bean quotes Dr. Lemahieu as saying: "The average participant who reduced or abstained from social media did not experience significantly better mental health outcomes than those who continued typical use. Effect sizes were minimal and frequently nonsignificant." Bean Decl. at F3. But that quote does not appear in the actual article NetChoice produced—"The effects of social media abstinence on affective well-being and life satisfaction: a systematic review and meta-analysis," published in *Nature.com*. *See* Ex. L.

## G. The Dong Liu Citations and Attributed Quotation Are Fabricated.

Dr. Bean also relies on a source he calls "Liu et al., 2024." *See* Bean Decl. at E, K2. In his "References," it appears as:

> Liu, D., et al. (2024). Thirty-year trends in adolescent anxiety and depression: A cross-national review. *International Journal of Adolescent Mental Health, 38*(1), 1-12.

*See* Bean Decl. at N. The *International Journal of Adolescent Mental Health* does not exist; the *International Journal of Adolescent **Medicine and** Health* does. And the *International Journal of Adolescent Medicine and Health* has yet to publish a 38th

volume—2025 marks its 37th. *See* 37 Int'l J. of Adolescent Med. & Health 3 (2025), t.ly/N7zhI (last visited Aug. 15, 2025). Nor has Dr. Dong Liu authored any article remotely matching Dr. Bean's citation.

The "Thirty-year" title, moreover, is another bad tell. NetChoice produced two Liu articles—one by Dr. *Dong* Liu (co-authored with a Dr. Baumeister), *see* Ex. M, and another by Dr. *Xiaohan* Liu, entitled "Thirty-year trends of anxiety disorders among adolescents based on the 2019 Global Burden of Diseases Study," and published in *General Psychiatry*, *see* Ex. N. Put plainly: Dr. Bean's reference pretends to cite the Dr. Dong Liu piece but instead lifts parts of the title from the Dr. Xiaohan Liu article to make up a new article title published in a non-existent journal.

Still, Dr. Bean attributes to Dr. Dong Liu and his co-authors (or perhaps to Dr. Xiaohan Liu?) a direct quotation: "Contrary to popular assumptions, adolescent anxiety showed a consistent global decline across three decades, even as smartphone ownership and internet use rapidly increased." Bean Decl. at E4. That quote appears neither in Dr. Dong Liu's nor in Dr. Xiaohan Liu's actual work. *See* Exs. M, N.

**H. The "R.T. Liu" Citation and Attributed Quotation Are Fabricated.**

Dr. Bean also cites a source he calls "Liu & Baumeister (2024)." *See* Bean Decl. at B4–B7, L2. In his "References," it appears as:

> Liu, R. T., & Baumeister, R. F. (2024). The effects of digital media use on mental health: A meta-analytic review. *Psychological Bulletin*.
>
> https://doi.org/10.1037/bul0000416

*See* Bean Decl. at N. The DOI hyperlink does lead to the *Psychological Bulletin*—but an unrelated "meta-analysis investigat[ing] who attains social status in face-to-face groups." Michael P. Grosz et al., *A Meta-Analytic Review of the Associations of Personality, Intelligence, and Physical Size with Social Status*, 150 Psychol. Bull. 253 (Mar. 2024), https://doi.org/10.1037/bul0000416. The named author pairing is also fiction. "R.T. Liu"—which appears to stand for Richard T. Liu—is an associate professor at Harvard Medical School. *See* Richard T. Liu, Profile, Massachusetts General Hospital Researcher Directory, t.ly/6DMR6 (last visited Aug. 15, 2025). It does not appear he has written any article with Dr. RBaumeister. *See id.*

Worse still, the proposition that Dr. Bean attributes (at L2) to Dr. Richard T. Liu—that "the average correlations between digital media use and mental health outcomes ... lack any practical clinical significance"—is the inverse of Dr. Richard Liu's actual published findings. In his own systematic and meta-analysis, Dr. Richard Liu and his co-authors observed that "The majority of studies identified focused on cyber victimization, and results suggested positive associations with all [self-injurious thoughts and behavior]s, with the association between cyber victimization and suicidal ideation stronger for adolescents than adults." Jacquelyn Nesi et al., *Social Media Use and Self-Injurious Thoughts and Behaviors: A Systematic Review and Meta-Analysis*, 87 Clin. Psychol. Rev. 102038 (2021), t.ly/dNosR. Indeed, their takeaway was the opposite of Dr. Bean's: Their "findings highlight the utility of examining specific social media behaviors and experiences" and "point to the need for more research in this area." *Id.*

16

It is no surprise then that the direct quote Dr. Bean attributes to Dr. Richard Liu (together with Dr. Baumeister)—"Such a small effect is indistinguishable from random noise and does not justify public concern or restrictive interventions[,]" Bean Decl. at B5—is fabricated. It neither appears in Dr. Dong Liu's article with Dr. Baumeister nor in Dr. Xiaohan Liu's article. *See* Exs. M, N.

**I. The "Martin R." Citation Is Fabricated.**

Dr. Bean also lists in his references an article by "Marin, R.":

> Martin, R. (2025). Life in the Media: Teen engagement, mental health, and digital life. *Digital Psychology Quarterly, 19*(1), 10-28.

*See* Bean Decl. at N. He never discusses it in his report—perhaps because neither the article, its author, nor the cited journal exists. Despite the State Defendants' best efforts, they cannot find a journal called *Digital Psychology Quarterly*—nor its supposed volume 19, issue 1. *See* Twenge Decl. ¶¶ 66–68. And "Martin, R." is nowhere to be found, too. Even the title is spliced from a different document NetChoice actually produced: the "2025 Life in Media Survey: A Baseline Study of Digital Media Use and Well-Being Among 11- to 13-Year-Olds," led by Dr. *J.D.* Martin and Dr. Stephen Song of the University of South Florida. *See* Ex. O.

**J. The Parry Citation and Attributed Quotation Are Fabricated.**

Dr. Bean relies on a source he calls "Parry et al. (2024)." *See* Bean Decl. at G. In his "References," it appears as:

> Parry, D. A., et al. (2023). The mere presence of smartphones: Cognitive load or distraction? *Journal of Experimental Social Psychology, 104*, 104416.

*See* Bean Decl. at N. But the *Journal of Experimental Social Psychology* has published nothing of the sort. *See* Twenge Decl. ¶¶ 71–73. Nor has Dr. Douglas A. Parry ever published in that journal. *See* Douglas A. Parry, Publications, Vrije Universiteit Amsterdam Researcher Portal, t.ly/Ga3Mk (last visited Aug. 14, 2025). The cited volume and page belong to an unrelated piece asking, "What do people think of those who respond to confrontation by acknowledging personally prejudiced behavior?" *See* Aaron J. Moss et al., *The Upside of Acknowledging Prejudiced Behavior*, 104 J. Experimental Soc. Psychol. 104401 (Jan. 2023), t.ly/uS5uk.

The bad mimicry is obvious from what NetChoice actually produced: an article authored by Dr. Parry alone—no "et al."—"Does the Mere Presence of a Smartphone Impact Cognitive Performance? A Meta-Analysis of the 'Brain Drain Effect,'" published in *Media Psychology* in 2023. *See* Ex. P. But nothing in that article contains the direct quote Dr. Bean attributes to Dr. Parry: "The presence of a smartphone does not uniformly impair cognitive performance; any such effects are small, task-specific, and dependent on visibility." Bean Decl. at G3. That quotation is wholly fabricated.

**K. The Scheeringa Citation and Attributed Quotation Are Fabricated.**

Dr. Bean cites a source he calls "Scheeringa (2025)," which follows the same pattern. *See* Bean Decl. at H, L5. In his "References," it appears as:

> Scheeringa, M. S. (2025). Self-report screening and diagnostic misclassification in youth mental health. *Journal of Adolescent Health, 76*(3), 345-351.

*See* Bean Decl. at N. The *Journal of Adolescent Health* did publish its 76th volume and third issue this year, but the page range Dr. Bean provides belongs to two

unrelated articles: Jordan Edwards et al., *Is Evidence on Mental Health Service Use Among Children & Youth During the COVID-19 Pandemic Transportable Across Settings?*, 76 J. Adolesc. Health 3 at 346 (Mar. 2025), t.ly/qfbme; and Kirsten Marchand et al., *A Scoping Review of Evidence-Based Interventions and Health-Related Services for Youth Who Use Nonmedical Opioids in Canada and the United States*, 76 J. Adolesc. Health 3 at 348 (Mar. 2025), t.ly/xD5Q7. Dr. Michael Scheeringa, a Tulane professor, has not written an article published in that journal. *See* Michael S. Scheeringa, Publications, t.ly/21-2m (last visited Aug. 15, 2025).

NetChoice did produce, however, a Dr. Scheeringa article—entitled "False Positives for Criterion A Trauma Events and Posttraumatic Stress Disorder Symptoms with Questionnaires Are Common in Children and Adolescents and Could Not Be Eliminated with Enhanced Instructions," published in the *Journal of Child and Adolescent Psychopharmacology. See* Ex. Q. But the quote Dr. Bean attributes to Dr. Scheeringa—"Over-reliance on self-report surveys inflates prevalence rates and contributes to false-positive classifications, especially in large-scale mental health studies of youth[,]" Bean Decl. at H4—appears nowhere in that study.

**L. The Sewall Citation Is Fabricated.**

Dr. Bean also cites—but never discusses—an article by "Sewall, C.J.R. & Parry, D.A. (2024)," listed in his References as:

> Sewall, C. J. R., & Parry, D. A. (2024). Social media and adolescent mental health: A case of misspecified causality. *New Media & Society*.
>
> https://doi.org/10.1177/14614448231123421

*See* Bean Decl. at N. Much like the faux Ferguson citation, the DOI link is dead. And neither the author pairing nor the cited article appears to exist. *See* Twenge Decl. ¶¶ 85–86. NetChoice did produce, however, a 2024 article by Craig J.R. Sewall and Douglas A. Parry, but it is titled "Social Media and Youth Mental Health: Simple Narratives Produce Biased Interpretations" and published in the *Journal of Psychopathology and Clinical Science. See* Ex. R.

**M. The Steinsbekk Citation and Attributed Quotations Are Fabricated.**

Dr. Bean also calls on Dr. Steinsbekk twice. *See* Bean Decl. at E5–E8, J. In his References, it appears as:

> Steinsbekk, S., et al. (2024). Does social media use reduce real-world social interaction in adolescents? *Child Development*. https://doi.org/10.1111/cdev.13940

Bean Decl. at N. The DOI is technically a hit—but it leads to an entirely unrelated study (by authors not including Dr. Steinsbekk). *See* Tess A. Forest, et al., *Memories of Structured Input Become Increasingly Distorted Across Development*, 94 Child Dev. e279 (Sept./Oct. 2023), https://doi.org/10.1111/cdev.13940.

What NetChoice actually produced was a very different paper by Dr. Steinsbekk: "The New Social Landscape: Relationships Among Social Media Use, Social Skills, and Offline Friendships from Age 10–18 Years," published in *Computers in Human Behavior*. Ex. S. But, if Dr. Bean's report was generated based on *that* paper, his report leaves out a critical observation in the paper—that increased social media use predicted reduced social skills in adolescents with high social anxiety adolescents. *See* Ex. S at 5. And that paper certainly does not contain either quote

20

that Dr. Bean attributes to Dr. Steinsbekk: (1) "Our findings do not support the hypothesis that social media reduces face-to-face social interaction among youth. For most adolescents, social media may help maintain and expand their social lives[,]" Bean Decl. at E7, and (2) "Our findings do not support the idea that social media displaces in-person social interactions. Instead, for most adolescents, these platforms appear to function as a bridge rather than a barrier to social connection[,]" *id.* at J3.

**N. The Sun Citation and Attributed Quotation Are Fabricated.**

Dr. Bean also cites a work by "Sun et al." *See* Bean Decl. I. And it appears in Dr. Bean's references as:

> Sun, X., et al. (2023). Age of first smartphone use and subsequent mental health outcomes: A longitudinal cohort study. *Pediatrics, 152(4).*

Bean Decl. at N. No such article exists or is published in *Pediatrics*—the flagship journal of the American Academy of Pediatrics. *See* Pediatrics, American Academy of Pediatrics, t.ly/Tq0Vl (last visited Aug. 15, 2025). This citation instead appears to be an imitation of an actual study by Dr. Sun that NetChoice produced, entitled "Are Mobile Phone Ownership and Age of Acquisition Associated with Child Adjustment? A 5-Year Prospective Study Among Low-Income Latinx Children," published in *Child Development. See* Ex. T. As its actual title may suggest, that study "has limitations"— and it candidly acknowledges as much, *see* Ex. T at 312—but Dr. Bean does not. And the quotation Dr. Bean attributes to Dr. Sun: "Our findings indicate that the timing of smartphone acquisition does not predict adverse outcomes in academic performance, sleep patterns, or mental health[,]" Bean Decl. at I5, is drastically

21

overstated compared to the actual study's nuanced conclusions among a limited demographic subgroup, *see* Ex. T.

**O. The Lancet Commission Citation Is Fabricated.**

Bean also cites—without discussion—the "Lancet Commission on Adolescent Health and Wellbeing," listing it in his references as such:

> The Lancet Commission on Adolescent Health and Wellbeing. (2024). Understanding self-harm and suicide among youth: A multifactorial perspective. *The Lancet, 403*, 1152-1164.

Bean Decl. at N. The Lancet Group does, in fact, commission groups on Adolescent Health and Wellbeing, *see* Commissions from The Lancet Group, The Lancet, t.ly/8eihD (last visited Aug. 15, 2025), but searches across *The Lancet* archives and 62 academic databases for the cited article return no results, *see* Twenge Decl. ¶¶ 107–108.

NetChoice produced instead a paper by the Lancet Commission on Self-Harm, led by Dr. Paul Moran. *See* Ex. U. *That* commission urges "the social media industry [to] take greater responsibility for the safety of young people" and calls on governments to "have a key role" in adopting "regulation through frameworks, standards, policing and legal interventions." Ex. U at 1477. We agree.

**P. The Social Media Experiments Meta Study Citations and Attributed Quotation Are Fabricated.**

Dr. Bean also relies on what he calls "Social Media Experiments Meta (2024)." *See* Bean Decl. at F4–F7, L4. Two citations in his references fit that description:

> Social Media Experiments Meta (2024). Meta-analysis of controlled trials on social media abstinence and psychological outcomes. *Journal of Media Psychology*. Advance online publication.

> Social Media Meta (2024). Broad meta-review of social media's impact on adolescent development. *Adolescent Psychiatry Review*. Advance online publication.

Bean Decl. at N. As might be expected at this point, neither is published in the *Journal of Media Psychology* or *Adolescent Psychiatry Review*. *See* Twenge Decl. ¶¶ 112–114, 119–121. Both, instead, *seem* to trace to a *Research Square* pre-print by Dr. Margarita Panayiotou (and several co-authors), entitled "Social media use among the least influential factors in adolescent mental health: Results from a panel network analysis." *See* Ex. V. But the authors themselves cautioned: "Preprints are preliminary reports that have not undergone peer review. They should not be considered conclusive, used to inform clinical practice, or referenced by the media as validated information." *Id.* And Dr. Bean's quotation apparently attributed to "Social Media Experiments Meta (2024)"—"Across dozens of experimental studies, we find no reliable support for the hypothesis that abstaining from social media improves mental health. Where effects do appear, they are small, short-lived, and inconsistent across demographic groups[,]" Bean Decl. at F4—also seems to be a fabrication.

*     *     *

If the detail here seems exhaustive, it is because the scale of fabrication demands it: *Every quotation and citation in Dr. Bean's report is fabricated.* Far from obscure errors, these would have been uncovered by even a cursory review of Dr.

23

Bean's report by NetChoice or its counsel. Yet no one did. Given this mountain of fabrication, Dr. Bean never could be deemed competent to offer reliable or credible expert testimony to this Court consistent with Rule 702. Accordingly, the Court should conclude that Dr. Bean's testimony is irreparably unreliable.

## II. The Court Should Impose the "Steep" Consequences Warranted For Citing AI-Fabricated Sources and Relying On AI-Fabricated Quotes.

If the Court finds Dr. Bean's report is tainted by fabricated quotations and citations (as the record overwhelmingly shows), it should exclude Dr. Bean's testimony, deny leave to amend, supplement, or extend deadlines for new experts, and award the State Defendants their reasonable fees and costs. "The consequences of citing fake, AI-generated sources … are steep" even "for an expert offering testimony to assist the Court under penalty of perjury." *Kohls*, 2025 WL 66514, at *5 (collecting cases). That is because "citing to fake sources imposes many harms, including 'wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few).'" *Id.* (quoting *Morgan v. Cmty. Against Violence*, No. 23-cv-353-WPJ/JMR, 2023 WL 6976510, at *8 (D.N.M. Oct. 23, 2023)). No matter if lawyers "accept responsibility and apologize profusely, much damage is done." *Johnson v. Dunn*, No. 2:21-CV-1701-AMM, 2025 WL 2086116, at *11 (N.D. Ala. July 23, 2025). "The opposing party expends resources identifying and exposing the fabrication; the court spends time reviewing materials, holding hearings, deliberating about sanctions, and explaining its ruling; the substance of the case is delayed; and public confidence about the trustworthiness of legal proceedings may be diminished." *Id.* "Courts therefore do not, and should not,

'make allowances for a [party] who cites to fake, nonexistent, misleading authorities'—particularly in a document submitted under penalty of perjury." *Kohls*, 2025 WL 66514, at \*5 (quoting *Dukuray v. Experian Info. Sols.*, 23 Civ. 9043 (AT) (GS), 2024 WL 3812259, at \*11 (S.D.N.Y. July 26, 2024)).

NetChoice should bear the steep consequences for derailing this litigation and forcing the State Defendants into the costly, painstaking task of dissecting each fabrication in NetChoice's expert report (all while the State Defendants' own expert reports are due next week). Accordingly, the State Defendants respectfully request that the Court impose the same remedy imposed by the *Kohls* court—(1) exclude any testimony from Dr. Bean and (2) preclude NetChoice from submitting any amended or supplemental declaration—and (3) award the State Defendants reasonable fees and costs associated with exposing the AI-fabricated citations and quotations in light of the volume and egregiousness of the fabrications.

## CONCLUSION

The Court should (1) exclude any testimony from Dr. Bean, (2) preclude NetChoice from submitting any amended or supplemental declaration (from any expert), and (3) award the State Defendants their reasonable fees and costs for exposing the AI-fabricated citations and quotations.

Dated: August 15, 2025                    Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General

*(counsel listed on next page)*

 /s/ *Zachary Faircloth*
ZACHARY FAIRCLOTH (La #39875)
  Principal Deputy Solicitor General
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70802
Telephone:  (225) 421-4088
Facsimile:   (225) 326-6795
FairclothZ@ag.louisiana.gov

*/s/ James M. Garner*
JAMES M. GARNER (La #19589)
JOSHUA S. FORCE (La #21975)
JEFFREY D. KESSLER (La #30156)
SOPHIE R. TROSCLAIR (La #40979)
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
  Special Assistant Attorneys General
909 Poydras Street, 28th Floor
New Orleans, LA 70112-1033
Telephone:  (504) 299-2100
Facsimile:   (504) 299-2300
JGarner@shergarner.com
JForce@shergarner.com
JKessler@shergarner.com
STrosclair@shergarner.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Zachary Faircloth*
ZACHARY FAIRCLOTH (La #39875)