IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| NETCHOICE,<br><br>*Plaintiff*,<br><br>v.<br><br>LIZ MURRILL, in her official capacity as Attorney General of Louisiana;<br>MIKE DUPREE, in his official capacity as Director of the Public Protection Division, Louisiana Department of Justice,<br><br>*Defendants*. | Civil Action No. 3:25-cv-231-JWD-RLB |

**PLAINTIFF NETCHOICE'S OPPOSITION**
**TO DEFENDANTS' MOTION TO EXCLUDE**

**Table of Contents**

Table of Authorities ................................................................................................................... ii

Introduction ................................................................................................................................ 1

Background ................................................................................................................................ 2

    A. Procedural background ................................................................................................ 2

    B. Dr. Bean's report analyzed real source publications, not AI hallucinations. ................ 2

    C. Defendants did not confer with NetChoice about Dr. Bean's report before filing their motion to exclude. ............................................................................................... 4

Argument .................................................................................................................................... 4

    I. Defendants' motion to exclude an already-withdrawn expert is moot. ............................ 4

    II. There is no basis for this Court to grant Defendants any fees or costs when NetChoice withdrew the expert and report the very next business day after becoming aware of the issues raised for the first time in Defendants' now-moot motion. ............................... 5

Conclusion ................................................................................................................................. 8

## Table of Authorities

Page(s)

**Cases**

*Boland Marine & Mfg. Co. v. Rihner*,
   41 F.3d 997 (5th Cir. 1995) ................................................................................................6

*Carter v. H2R Rest. Holdings, LLC*,
   2017 WL 3724122 (N.D. Tex. Aug. 29, 2017) ....................................................................7

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ..............................................................................................................6

*Kohls v. Ellison*,
   2025 WL 66514 (D. Minn. Jan. 10, 2025) ..................................................................1, 6, 7

*Lackey v. Stinnie*,
   145 S. Ct. 659 (2025) ..........................................................................................................6

*Matta v. May*,
   118 F.3d 410 (5th Cir. 1997) ..............................................................................................6

*In re Moore*,
   739 F.3d 724 (5th Cir. 2014) ..............................................................................................6

*Rowe v. Stewart & Stevenson Servs., Inc.*,
   2004 WL 1810686 (E.D. La. Aug. 12, 2004) .....................................................................4

*Starr Indem. & Liab. Ins. Co. v. River & Roads Directional Drilling, LLC*,
   2024 WL 4907403 (S.D. Miss. Oct. 15, 2024) ...................................................................7

*Tejero v. Portfolio Recovery Assocs., L.L.C.*,
   955 F.3d 453 (5th Cir. 2020) ..............................................................................................6

*Tijerino v. Spotify USA Inc.*,
   2025 WL 1866057 (E.D. La. July 7, 2025) ........................................................................7

**Rules**

Fed. R. Civ. P. 11 ..................................................................................................................5, 6

Fed. R. Civ. P. 26 .......................................................................................................................5

Fed. R. Civ. P. 37 .......................................................................................................................5

*Instructions for Filing Motions* in Limine *in Civil and Criminal Cases before Judge John W. deGravelles*, https://perma.cc/W7YW-7S46 ...................................................... 8

LR 7 ................................................................................................................................................ 8

## Introduction

Defendants' motion to exclude never needed to be filed—and is now moot. Defendants never conferred with NetChoice over Dr. Bean's report before filing their motion. The next business day after Defendants filed, NetChoice withdrew its designation of Dr. Bean as a testifying expert and has withdrawn his report. *See* Ex. 1 at 3-5. NetChoice will not rely on Dr. Bean's testimony or opinions in any way in this litigation, and NetChoice is not seeking to amend or supplement his report. Defendants agree that there is no substantive relief left for this Court to order. Defendants have nevertheless refused to withdraw Defendants' motion because Defendants also seek fees and costs incurred in preparing a motion that was never necessary to file. *See id.* at 1.

But Defendants cite no authority—no statute, Federal Rule of Civil Procedure, Local Rule, or Standing Order—authorizing such an award, and especially not authorizing an award under these circumstances. None exists. Defendants also have made no attempt to satisfy the high standard of showing clear and convincing evidence of bad faith to warrant such a sanction. There was none. Indeed, the court in *Kohls v. Ellison*—the out-of-district case Defendants claim "offers a roadmap to remedy the wrong here," Mem.8—did *not* award fees, even though the offering party *refused* to withdraw the challenged expert. 2025 WL 66514, at *1 (D. Minn. Jan. 10, 2025). There is even less justification for fees here, where NetChoice voluntarily withdrew Dr. Bean as soon as it learned of the problem.

Dr. Bean's now-withdrawn report—which was never filed with the Court—did not rely on or discuss "AI hallucinat[ed]" sources. Mem.1. Rather, Dr. Bean's report analyzed academic studies, all real, all produced to Defendants when the report was served, and multiple cited by Defendants themselves.

That said, Dr. Bean's report did contain errors. NetChoice addressed them immediately by withdrawing the expert report and de-designating Dr. Bean.

1

There is no basis to award Defendants their fees and costs for a motion that never needed to be filed on an issue that NetChoice resolved as soon as it was brought to its attention.

## Background

### A. Procedural background

NetChoice filed this action because Louisiana Senate Bill 162 ("Act") unconstitutionally restricts minors' and adults' access to fully protected online speech. ECF 1. NetChoice moved for a preliminary injunction and requested relief before the Act's July 1, 2025, effective date. ECF 6. At Defendants' suggestion, the parties proposed a joint schedule under which expedited fact and expert discovery would occur before cross-dispositive motions, which this Court adopted. ECF 26. As part of this schedule, Defendants will not enforce the Act before December 19, 2025. *Id.*

### B. Dr. Bean's report analyzed real source publications, not AI hallucinations.

In accordance with that schedule, NetChoice identified Dr. Anthony Bean as an expert witness on May 12, 2025. Ex. 2 ¶ 3. NetChoice then served Dr. Bean's report on Defendants on July 28, *id.* ¶ 4, in accordance with the Case Management Order, ECF 26.

The sources discussed in Dr. Bean's report are not "AI hallucinations." Mem.1. Rather, Dr. Bean's report analyzes real source publications that exist and support his conclusions. Defendants know that those sources are real because NetChoice provided *all* those real, true, and correct source publications to Defendants when the report was served. In other words, the substance of Dr. Bean's report discussed the findings of real academic articles that Defendants possess—and not AI-hallucinated articles, as Defendants' motion claims.

Had Defendants raised their concerns about Dr. Bean's report with NetChoice's counsel during the meet-and-confers the parties held after service of Dr. Bean's report, NetChoice's counsel could have addressed the errors and avoided any need to involve the Court. Defendants instead

2

rushed to Court without conferring with NetChoice, unnecessarily burdening this Court with a motion that could have been avoided.

Dr. Bean's report did contain errors—but those errors do not include analyzing or discussing AI-hallucinated articles. First, the version of the report served on Defendants contained summations that were misattributed as quotes made by the authors of the cited sources. Ex. 2 ¶ 9. Dr. Bean initially provided NetChoice's counsel with a final report that did not misattribute the summations. *Id.* ¶ 7. Rather, the language in that initial version of the final report was introduced as summations *without* quotation marks. *Id.* But Dr. Bean subsequently sent counsel a second version of his final report, which added his hourly rate *and* the quotation marks and language misattributing the summations as quotations from the authors of the cited sources. *Id.* ¶ 9. That is the incorrect version that counsel served on Defendants, without appreciating that the summation sentences had been altered from the prior version. *Id.* ¶ 10.

Second, although the body of Dr. Bean's report cited the source publications that counsel provided Defendants, the long-form citations at the end of Dr. Bean's report included incorrect citations to the source publications analyzed by his report. *Id.* ¶ 11. NetChoice provided all of the true and correct source publications to Defendants when it served the report. *Id.* ¶ 5. And all of the citations within the body of Dr. Bean's report clearly refer to and discuss those produced publications. Those sources are real and support Dr. Bean's substantive conclusions.

Given Dr. Bean's multiple errors, NetChoice chose to de-designate Dr. Bean as a testifying expert witness the next business day after NetChoice became aware of these errors. *Id.* ¶ 15; Ex. 1 at 3-5.

3

### C. Defendants did not confer with NetChoice about Dr. Bean's report before filing their motion to exclude.

Over the next couple of weeks after NetChoice served Dr. Bean's report on July 28, 2025, NetChoice and Defendants conferred multiple times on related and unrelated matters. For instance, on August 5, the parties met to discuss the deposition of NetChoice's 30(b)(6) witness. Ex. 2 ¶ 13. On August 12, the parties participated in a status conference with this Court. ECF 40. On August 13—two days before Defendants filed their motion—the parties conferred about expert deposition dates, including dates for Dr. Bean's deposition. Ex. 2 ¶ 14. At no point during any of these conferences, nor at any other point before filing their motion, did Defendants raise their concerns about Dr. Bean's report to NetChoice. And Defendants never asked NetChoice to voluntarily withdraw Dr. Bean's report.

Had Defendants made that request, NetChoice would have agreed. Instead, on Friday, August 15, 2025, without ever meeting and conferring with NetChoice, Defendants moved this Court to exclude Dr. Bean's report and award Defendants costs and fees. *See* ECF 42. The following Monday, NetChoice informed Defendants that it had withdrawn its designation of Dr. Bean as a testifying expert witness. Ex. 1 at 3-5.

NetChoice has since asked Defendants to withdraw their motion, but they have refused. Ex. 1 at 1; Ex. 2 ¶ 17.

### Argument

**I.   Defendants' motion to exclude an already-withdrawn expert is moot.**

Defendants' motion is moot. When a party "no longer intends" to offer "an expert," a motion to exclude that expert's testimony "is clearly moot." *Rowe v. Stewart & Stevenson Servs., Inc.*, 2004 WL 1810686, at *3 (E.D. La. Aug. 12, 2004). NetChoice has withdrawn its designation of Dr. Bean as a testifying expert witness. NetChoice will not rely on Dr. Bean's report or any

4

additional testimony from Dr. Bean in any way in this matter. Nor does NetChoice intend to rely on any other expert witness in this case. There is nothing for this Court to exclude, so it should deny Defendants' motion as moot.

Defendants also ask this Court to preclude NetChoice from submitting a supplemental declaration from a different expert. Mem.25. This requested relief is simultaneously unripe and also moot. NetChoice does not intend to offer a different expert. And the deadlines to identify experts and produce expert reports have passed. *See* ECF 26. So there is no relief regarding the merits of Defendants' motion left for the Court to grant.

**II.     There is no basis for this Court to grant Defendants any fees or costs when NetChoice withdrew the expert and report the very next business day after becoming aware of the issues raised for the first time in Defendants' now-moot motion.**

There is no basis to grant Defendants fees and costs for a motion to exclude an expert witness—whose report was not filed with the Court—and who was withdrawn the next business day after NetChoice became aware of the issues raised for the first time in Defendants' motion. Defendants' motion never had to be filed with this Court in the first place. And it became moot a business day after it was filed with this Court.

Defendants cite no authority, based in statutes or rules, for this Court to award fees and costs in this situation. That is for good reason: None exists. For example, Federal Rule of Civil Procedure 37(a)(5)(A)(i) expressly prohibits an award of fees when the "movant filed the motion before attempting in good faith to obtain the [result sought] without court action." Defendants did not attempt to obtain Dr. Bean's withdrawal without court action, and Defendants could have obtained this result simply by raising these issues with NetChoice before filing their motion in this Court. Similarly, Rule 26(g)(3) does not apply because it authorizes sanctions only for inadequate disclosures under Rules 26(a)(1) or (a)(3). But expert testimony is disclosed under Rule 26(a)(2). Further, a possible Rule 11 sanction "applies *only* where a person files a paper" with the Court,

5

but NetChoice did not file Dr. Bean's report with the Court—it served the report on Defendants during discovery. *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 458 (5th Cir. 2020). Regardless, Rule 11 expressly excludes expert disclosures from its scope. *See* Fed. R. Civ. P. 11(d); *cf. Kohls*, 2025 WL 66514, at *1, *4 (explaining that the defective declarations *were filed* with the court in that case, so Rule 11 could apply, but the court did not award attorneys' fees to the moving party anyway).[1]

That just leaves the Court's "inherent powers" to sanction, which "must be exercised with restraint and discretion," and can only entail "attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation and citation omitted). "A court should invoke its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (quoting *Chambers*, 501 U.S. at 46). This "high" threshold requires a court to "make a specific finding" of "bad faith." *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997). That "finding of bad faith or willful abuse of the judicial process" must be supported by "clear and convincing evidence." *In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014) (internal quotation and citation omitted).

Defendants do not contend that NetChoice or its counsel acted in bad faith. NetChoice and its counsel regret that they did not identify Dr. Bean's errors before serving his report. But the errors in Dr. Bean's report were a mistake, not NetChoice's bad-faith act. And NetChoice acted immediately and in good faith to correct the error: NetChoice withdrew Dr. Bean's report and

---

[1] Even if there were some statute or rule that could allow Defendants to recover fees for prevailing on a motion to exclude, Defendants could not claim that they somehow prevailed on that motion because it became moot before any resolution. *See Lackey v. Stinnie*, 145 S. Ct. 659, 671 (2025).

de-designated him as an expert witness the next business day after NetChoice became aware of these issues.

The *Kohls* order—which, again, Defendants claim "offers a roadmap to remedy the wrong here," Mem.8—is indeed instructive. There, the plaintiffs sought to exclude one of the defendants' experts based on allegations of using artificial intelligence. *Kohls*, 2025 WL 66514, at *1. In stark contrast, the defendants there *did not withdraw* the designation of their expert in response to the motion. *Id.* In fact, the defendants asked to file an amended declaration from that expert. *Id.* Even though the *Kohls* court granted the motion to exclude the expert, it did *not* grant any fees or costs to the plaintiffs. *Id.* at *5. Here, by contrast, NetChoice *voluntarily withdrew* the designation of Dr. Bean *the next business day* after becoming aware of these issues, which were raised to NetChoice for the first time in Defendants' motion filed with this Court. Ex. 1 at 3-5.

If Defendants had informed NetChoice of the problems earlier, NetChoice would have withdrawn Dr. Bean then too. The only reason Defendants incurred costs and fees in preparing and filing their motion is their own decision to go to this Court without conferring with NetChoice or allowing it any opportunity to rectify the situation. "Conference requirements" avoid "needless[] expend[iture]" of judicial resources. *Tijerino v. Spotify USA Inc.*, 2025 WL 1866057, at *6 (E.D. La. July 7, 2025) (internal quotation and citation omitted).

When parties burden courts with avoidable disputes, courts refuse to award fees. *See, e.g.*, *Starr Indem. & Liab. Ins. Co. v. River & Roads Directional Drilling, LLC*, 2024 WL 4907403, at *17 (S.D. Miss. Oct. 15, 2024) (refusing to grant "fees to [] counsel for preparing an unnecessary motion"); *Carter v. H2R Rest. Holdings, LLC*, 2017 WL 3724122, at *6 (N.D. Tex. Aug. 29, 2017) (explaining it would be "unjust" to award a party "any expenses she may have incurred in" defending a motion because she refused "to make herself available for a meet-and-confer session").

7

Indeed, both the Local Rules and this Court require parties to "confer with the opposing party" before filing certain types of motions, because "[m]any of these motions could be resolved by the parties communicating with each other before filing." LR 7(h); *Instructions for Filing Motions* in Limine *in Civil and Criminal Cases before Judge John W. deGravelles*, https://perma.cc/W7YW-7S46.

That is exactly what should have happened here. Had Defendants conferred with NetChoice about their concerns with Dr. Bean's report, they would not have needed to file this "needless[]" motion with this Court. LR 7(h). The mere filing of such a motion provides no basis, in statutes or rules, for Defendants to recover their fees. And NetChoice responded to the issues raised in the motion by withdrawing Dr. Bean, the very next business day, resolving this matter without any need for this Court's involvement.

## Conclusion

This Court should deny Defendants' motion to exclude as moot and deny Defendants any further relief.

Dated: August 29, 2025

Jared B. Magnuson*
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305
(512) 693-8350
jared@lkcfirm.com

Joshua P. Morrow*
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350
josh@lkcfirm.com


J. Christopher Dippel, Jr. (#30480)
KEAN MILLER LLP
400 Convention Street, Suite 700
Baton Rouge, LA 70802
chris.dippel@keanmiller.com

Respectfully submitted,

*/s/ Steven P. Lehotsky*
Steven P. Lehotsky*
Scott A. Keller*
Jeremy Evan Maltz*
Shannon G. Denmark*
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW, Suite 700
Washington, DC 20001
(512) 693-8350
steve@lkcfirm.com
scott@lkcfirm.com
jeremy@lkcfirm.com
shannon@lkcfirm.com

**Lead Counsel**

*/s/ Claire E. Juneau*
Claire E. Juneau (#33209)
Jeffrey J. Gelpi (#37130)
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112
Telephone: (504) 585-3050
claire.juneau@keanmiller.com
Jeffrey.gelpi@keanmiller.com


*admitted pro hac vice*


*Attorneys for Plaintiff NetChoice*

9