## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

NETCHOICE,

Plaintiff,

v.

LIZ MURRILL, et al.,

Defendants.

Civil Action No. 3:25-cv-231

Judge: JWD - RLB

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE DR. ANTHONY BEAN

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................................iii

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.    NETCHOICE'S OBFUSCATIONS CONFIRM THE NEED FOR STEEP CONSEQUENCES...... 2

II.   NETCHOICE'S SOFT SELF-SANCTIONS DO NOT MOOT THIS MOTION. ...................... 5

III.  THE COURT SHOULD NOT EXCUSE MISCONDUCT OF THIS MAGNITUDE. ................... 6

CONCLUSION................................................................................................................. 7

CERTIFICATE OF SERVICE................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Dukuray v. Experian Info. Sols.*,
   No. 23 CIV. 9043 (AT) (GS), 2024 WL 3812259 (S.D.N.Y. July 26, 2024),
   *report and recommendation adopted*, No. 23 CIV. 9043 (AT), 2024 WL 3936347
   (S.D.N.Y. Aug. 26, 2024) .................................................................................. 6

*Kohls v. Ellison*,
   No. 24-CV-3754 (LMP/DLM), 2025 WL 66514 (D. Minn. Jan. 10, 2025) ......... 1, 5, 6

*Kruse v. Karlen*,
   692 S.W.3d 43 (Mo. Ct. App. 2024), *reh'g and/or transfer denied* (Apr. 9, 2024) ... 7

*Mata v. Avianca, Inc.*,
   678 F. Supp. 3d 443 (S.D.N.Y. 2023) ........................................................ 6

*Park v. Kim*,
   91 F.4th 610 (2d Cir. 2024) ....................................................................... 6

**Other Authorities**

Eugene Volokh, *Apparent Massive Quotation/Citation Errors in NetChoice Expert's
   Report*, The Volokh Conspiracy (Reason.com) (Aug. 18, 2025), t.ly/S4y9c .............. 4

**Rules**

Fed. R. Civ. P. 11(b) .................................................................................... 4

**INTRODUCTION**

Defendants are acutely aware that candor to this Court, while always non-negotiable, is exceptionally important in this sensitive matter involving fabrications submitted by a high-profile plaintiff and its counsel. Accordingly, Defendants defer to the Court's sound discretion on the appropriate consequences given the facts. The facts: NetChoice could have acknowledged that it submitted a largely AI-hallucinated expert report under penalty of perjury, apologized for that mistake, and moved on. Regrettably, it did not. Instead, NetChoice chose indignation and excuses. It withdrew Dr. Bean only after being caught, blamed Defendants for seeking relief, and spun an implausible story that avoids answering the actual problems with Dr. Bean's report. That lack of candor and refusal to unconditionally accept responsibility speaks volumes and confirms the need for consequences steep enough to ensure that this misconduct is never repeated in this Court—by NetChoice, its counsel, or anyone else.

Modest fee-shifting is a proportionate remedy for Defendants' wasted expert and attorney resources inflicted by the expert report's fabrication. But again, Defendants ultimately defer to the Court's sound discretion in determining the sanctions necessary to secure accountability and deter repetition. All that Defendants ask is that the Court "not, 'make allowances for [NetChoice's] cit[ing] to fake, nonexistent, misleading authorities'—particularly in a document submitted under penalty of perjury." *Kohls v. Ellison*, No. 24-CV-3754 (LMP/DLM), 2025 WL 66514, at *5 (D. Minn. Jan. 10, 2025) (citation omitted).

## ARGUMENT

### I.   NETCHOICE'S OBFUSCATIONS CONFIRM THE NEED FOR STEEP CONSEQUENCES.

Before turning to NetChoice's specific legal arguments, it is important to begin with NetChoice's "Background" account of what went wrong and its transparent attempt to dodge accountability. *See* Opp.2–3. Defendants did not move to exclude Dr. Bean because his report "rel[ied] on or discuss[ed] 'AI hallucinat[ed]' *sources*." Opp.1 (emphasis added). Defendants' motion itself stated that "the original sources NetChoice produced [to Defendants] exist." Mot.1. The *problem* was that "the substance of Dr. Bean's report is fake," Mot.1—specifically the "17 citations to sources that do not exist and 12 quotations never written by the authors he names," Mot.8, catalogued one by one in Defendants' motion to exclude him, *see* Mot.8–24.

NetChoice knows that. But its able counsel also know "Rule 11 sanction[s] 'appl[y] … where a person files a paper' with the Court[.]" Opp.5. So, in the face of Defendants' clear complaint that Dr. Bean's sworn expert report fabricated *citations* and *quotations*, NetChoice chose to respond by attacking a strawman: five carefully crafted denials about "AI hallucinations" as to the *sources* they produced to Defendants, rather than the clearly fabricated *citations* and *quotations* in Dr. Bean's report:

- "Dr. Bean's now-withdrawn report—which was never filed with the Court—did not rely on or discuss 'AI hallucinat[ed]' sources." Opp.1 (quoting Mot.1);

- "B. Dr. Bean's report analyzed real source publications, not AI hallucinations." Opp.2 (emphasis removed);

- "The sources discussed in Dr. Bean's report are not 'AI hallucinations.'" Opp.2 (quoting Mot.1);

2

- "[T]he substance of Dr. Bean's report discussed the findings of real academic articles that Defendants possess—and not AI-hallucinated articles, as Defendants' motion claims." Opp.2;

- "Dr. Bean's report did contain errors—but those errors do not include analyzing or discussing AI-hallucinated articles." Opp.2.

Those five sentences are the sum total of NetChoice's engagement with an expert report "bear[ing] the hallmarks of AI fabrication." Mot.4. Not once does NetChoice dispute that the quotations in the report were contrived or that the citations were false—much less does NetChoice face the accusation that those easily recognizable errors appear AI-generated. All NetChoice can muster: "Dr. Bean's report did contain errors." Opp.3.

Worse, NetChoice offers an excuse that is as implausible as it is incomplete. According to NetChoice, the "misattributed … quotes," Opp.3, were the product of a version-control mishap. On its telling, NetChoice's counsel asked Dr. Bean to add his hourly rate to an "initial version of the final report" that supposedly contained only "summations *without* quotation marks." Opp.3. But in the process, Dr. Bean went rogue. He not only added his hourly rate but also inserted "quotation marks"— apparently along with italics, bolding, *and* targeted prefatory "language" (*e.g.*, "The authors concluded:" ECF No. 42-5 at B5)[1]—before returning *that* "incorrect version" to NetChoice's counsel. Opp.3. It was inadvertently this "incorrect version," NetChoice says, that Defendants received on July 28. Opp.3. And as to the "incorrect

---

[1] *See also, e.g.*, *id.* at B2 ("In their words:"), C4 ("As the authors stated:"), D4 ("The authors write:"), E4 ("The authors write:"), E7 ("The researchers concluded:"), F3 ("As the authors stated:"), F4 ("This larger synthesis echoed Lemahieu et al.'s conclusions, stating:"), G3 ("As the researchers summarized:"), G7 ("As they noted:"), H4 ("Scheeringa writes:"), I5 ("The authors concluded:"), J3 ("The authors stated:").

citations to the source publications," Opp.3, NetChoice waves those away as no-harm-no-foul because "all of the citations within *the body* of Dr. Bean's report clearly refer to and discuss those produced publications." Opp.3 (emphasis added); *but see* Mot. 14–17 (explaining that none of the citations in Dr. Bean's report exist and, among other examples, detailing Dr. Bean's mix-up of Dr. *Dong* Liu and Dr. *Xiaohan* Liu in the body of the report).

That story begs far more questions than it answers. Where is the purportedly correct version of Dr. Bean's report—with metadata to confirm when it was created? Why would Dr. Bean ever take his own supposed "summations" and misattribute them to authors who never uttered those quotations or wrote the articles he cites? And how could every long-form citation in Dr. Bean's references appear like legitimate references but uniformly contain made-up article names, journals, and author pairings? Professor Eugene Volokh pressed NetChoice on these very questions. *See* Eugene Volokh, *Apparent Massive Quotation/Citation Errors in NetChoice Expert's Report*, The Volokh Conspiracy (Reason.com) (Aug. 18, 2025), t.ly/S4y9c. NetChoice's response then? "[W]e do not have any additional insight as to why or how these errors arose." *Id.* The right response? Dr. Bean never did any of this; his report reeks of AI hallucination built upon real sources that AI was asked to consider.

It is one thing to offer strained excuses in the court of public opinion; it is quite another to represent them to a federal court after an "inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). NetChoice's decision to do so—without

contrition—confirms why the "consequences of citing fake, AI-generated sources" need to be "steep." *Kohls*, 2025 WL 66514, at \*5.

## II.    NETCHOICE'S SOFT SELF-SANCTIONS DO NOT MOOT THIS MOTION.

It is welcome news that "NetChoice will not rely on Dr. Bean[]," Opp.4, and that it now disclaims "any other expert witness in this case," Opp.5. Those concessions make good sense given Dr. Bean's "irreparably unreliable" report, Mot.4, and the fact that "the deadlines to identify experts and produce expert reports have passed," Opp.5. But the controversy in Defendants' motion remains very much alive. Defendants are out thousands of dollars compensating Dr. Twenge to rebut Dr. Bean's testimony—work that included searching "all 62 of the EBSCO academic databases" for 17 different cited articles expressly listed in Dr. Bean's "References," only to confirm none of them exist. *See* ECF No. 42-6. And that is to say nothing of the attorney time consumed in preparing for an expedited deposition of Dr. Bean— only to be told by Dr. Twenge that Dr. Bean's quotations and citations were fabricated—and thus requiring expedited drafting of this motion to expose it. *See Kohls*, 2025 WL 66514, at \*5 ("citing to fake sources imposes many harms, including 'wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few).'" (citation omitted)). Respectfully, serving an AI-fabricated expert report and then yanking it when caught does not erase the misconduct—or the costs it imposed.

What would have spared those unnecessary costs was NetChoice's counsel performing "[a] cursory comparison between Dr. Bean's report and the disclosed original sources"—or "just *reading* Dr. Bean's report"—before serving it. Mot.1. It is

5

therefore remarkable that NetChoice now repeatedly faults *Defendants* for not "conferring" and absorbing the costs of its mistake. Opp.3; *see id.* at 1–4, 7–8. Worse still, to press the point, NetChoice invokes Local Rule 7(h), while omitting its critical qualifier:

> To avoid the needless filing of motions *in limine*, the Court requires the party seeking to file a motion *in limine* on a subject matter **other than the admissibility of expert testimony (*i.e.*, non-*Daubert* motions *in limine*)**, to confer or attempt to confer with the opposing party (or any party having an interest to oppose) before filing the motion in a good faith effort to resolve the issue(s) amicably.

L.R. 7(h) (emphasis added). To be sure, a conferral might have spared NetChoice the expense—and embarrassment—of serving an error-ridden expert report. But Defendants are not obligated to rescue NetChoice from the consequences of its own litigation choices. And NetChoice's selectively quoting a local rule to suggest otherwise only compounds the candor issue—and confirms steep consequences are necessary.

## III.    THE COURT SHOULD NOT EXCUSE MISCONDUCT OF THIS MAGNITUDE.

Defendants' request is modest: The Court "should not[] 'make allowances for a [party] who cites to fake, nonexistent, misleading authorities'—particularly in a document submitted under penalty of perjury." *Kohls*, 2025 WL 66514, at *5 (quoting *Dukuray v. Experian Info. Sols.*, No. 23 CIV. 9043 (AT) (GS), 2024 WL 3812259, at *11 (S.D.N.Y. July 26, 2024), *report and recommendation adopted*, No. 23 CIV. 9043 (AT), 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024)). The Court has ample authority to do so—under its inherent authority, its power to police discovery abuses, and, if it issues a show-cause order, Rule 11. *E.g.*, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443,

6

466 (S.D.N.Y. 2023) (imposing a $5,000 fine); *Park v. Kim*, 91 F.4th 610, 616 (2d Cir. 2024) (referring to court's "Grievance Panel … for further investigation"); *cf. Kruse v. Karlen*, 692 S.W.3d 43, 54 (Mo. Ct. App. 2024), *reh'g and/or transfer denied* (Apr. 9, 2024) (imposing $10,000 in "appellate attorneys' fees").

But the modesty of Defendants' request should not obscure the scope of the misconduct. This was not a stray misquote or misformatted citation: Every single citation in Dr. Bean's "References" section identifies a source that does not exist, and virtually every quotation in his report was misattributed to authors who never wrote the words he put in their mouths. *See* Mot.8–24. Defendants respectfully submit that shifting costs and fees necessitated by exposing this fabrication is a small but necessary remedy. Again, however, Defendants defer to the Court's sound judgment in fashioning the sanction needed to ensure accountability and deterrence.

## CONCLUSION

The Court should (1) reprimand NetChoice for Dr. Bean's declaration citing AI-fabricated sources and quotations, (2) exclude any testimony from Dr. Bean and preclude NetChoice from submitting any amended or supplemental declaration from any expert, and (3) shift fees and costs to offset Defendants' resources wasted in discovering and exposing this misconduct.

7

Dated: September 5, 2025                        Respectfully submitted,

                                               ELIZABETH B. MURRILL
                                               Attorney General


 /s/ Zachary Faircloth                          /s/ James M. Garner
ZACHARY FAIRCLOTH (La #39875)                  JAMES M. GARNER (La #19589)
  Principal Deputy Solicitor General           JOSHUA S. FORCE (La #21975)
OFFICE OF THE LOUISIANA ATTORNEY               JEFFREY D. KESSLER (La #30156)
GENERAL                                        SOPHIE R. TROSCLAIR (La #40979)
1885 North Third Street                        SHER GARNER CAHILL RICHTER
Baton Rouge, LA 70802                          KLEIN & HILBERT, L.L.C.
Telephone:  (225) 421-4088                       Special Assistant Attorneys General
Facsimile:   (225) 326-6795                    909 Poydras Street, 28th Floor
FairclothZ@ag.louisiana.gov                    New Orleans, LA 70112-1033
                                               Telephone:  (504) 299-2100
                                               Facsimile:   (504) 299-2300
                                               JGarner@shergarner.com
                                               JForce@shergarner.com
                                               JKessler@shergarner.com
                                               STrosclair@shergarner.com

                                               Counsel for Defendants

8

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Zachary Faircloth*
ZACHARY FAIRCLOTH (La #39875)

9