UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| NETCHOICE | CIVIL ACTION |
| VERSUS | |
| LIZ MURRILL, ET AL. | NO. 25-231-JWD-RLB |

**ORDER**

Before the Court is Defendants' Motion to Compel (R. Doc. 35). The Court ordered expedited briefing. (R. Doc. 41). The motion is opposed. (R. Doc. 44). Defendants filed a reply memorandum. (R. Doc. 48).

**I.  Background**

On March 18, 2025, NetChoice ("Plaintiff" or "NetChoice") commenced this action by filing a Complaint for Declaratory and Injunctive Relief, naming as defendants Liz Murrill, in her official capacity as Attorney General of Louisiana, and Mike Dupree, in his official capacity as Director of the Public Protection Division, Louisiana Department of Justice (collectively, "Defendants"). (R. Doc. 1). NetChoice, a nonprofit trade association for internet companies, alleges that Louisiana Senate Bill 162, the Secure Online Child Interaction and Age Limitation Act (the "Act"), is both facially unconstitutional and unconstitutional as applied to its members and services. Among other things, NetChoice alleges that the Act's age-verification, parental-consent, and advertising provisions violate First Amended protections by burdening access to protected speech. NetChoice asserts that the Act regulates, "at a minimum, the following NetChoice members: (1) Meta, which owns and operates Facebook and Instagram; (2) Nextdoor; (3) Pinterest; (4) Snap Inc., which owns and operates Snapchat; (5) Reddit; (6) X; and (7) YouTube." (R. Doc. 1 at 5).

Plaintiff's Motion for Preliminary Injunction (R. Doc. 6) remains pending before the district judge. In order to conduct expedited discovery for the purposes of resolving this motion, Defendants agreed to delay the implementation of the Act, which was scheduled for July 1, 2025. (R. Doc. 22). The district judge issued a Case Management Order setting the deadline to complete fact discovery on July 14, 2025, the deadline to complete expert discovery on August 25, 2025, the deadline to submit of cross motions/briefing on the Motion for Preliminary Injunction on September 22, 2025, and a hearing on the motions to take place on November 18, 2025. (R. Doc. 26). In response to a joint request of the parties, the Court extended the fact discovery deadline to July 31, 2025. (R. Doc. 34). The parties have also agreed, in accordance with Local Rule 26(d), to conduct expert depositions through September 9, 2025. (R. Doc. 45).

The record indicates that NetChoice provided initial disclosures on April 23, 2025 (R. Doc. 35-3) and Responses to Interrogatories, Requests for Production, and Requests for Admission on May 19, 2025 (R. Doc. 44-1).

NetChoice represents that Defendants provided a draft Rule 30(b)(6) deposition notice on June 8, 2025, which "overlapped entirely in substance with Defendants' written discovery requests." (R. Doc. 44 at 13). NetChoice attempted to set the Rule 30(b)(6) deposition prior to the July 14, 2025 deadline. Ultimately, the parties met-and-conferred regarding the proposed deposition topics on June 23 and June 27, after which NetChoice informed Defendants that NetChoice's Rule 30(b)(6) representative, Mr. Bartlett Cleland, would be available for a deposition on July 24 and 31.

On June 13, 2025, NetChoice provided supplemental written discovery responses. (*See* R. Doc. 44 at 9).

On July 15, 2025, Defendants served a Rule 30(b)(6) deposition notice on NetChoice, seeking testimony on 22 topics at a deposition to take place on July 30, 2025. (R. Doc. 35-5). Defendants summarize the topics as follows: "(i) identification of NetChoice, its members, and their interactions, communications, and lobbying efforts (Topics 1-4, 11); (ii) the NetChoice members' services and features allegedly regulated by the Act (Topics 5-6, 15); (iii) content-moderation, parental-consent, and related minor-protection policies and accompanying enforcement by NetChoice members (Topics 7-10, 12-13, 16-19); (iv) internal analyses, data sources, and academic studies relied upon to create those policies and drive those actions (Topics 14); and (v) the pleadings in this case (Topics 19-22)." (R. Doc. 35-1 at 3-4; *see* R. Doc. 35-5).

On July 23, 2025, NetChoice served its objections to the deposition topics. (R. Doc. 35-6). NetChoice raised objections to Topics 2, 3(a),(c), (e)-(i), and 4-19. Nevertheless, NetChoice stated that, with respect to Topics 2, 4-6, 9-17: "Subject to these objections, Mr. Cleland will respond with non-privileged information that NetChoice has in its knowledge, custody, possession, or control." (R. Doc. 35-6). Accordingly, the topics to which NetChoice did not agree to respond are Topics 3(a),(c), (e)-(i), 7, 8, 18, and 19. That same day, NetChoice provided supplemental disclosures (R. Doc. 35-4) and a privilege log with respect to information and documents withheld in response to interrogatories and requests for production (R. Doc. 35-8).

Topic Nos. 3(a),(c), (e)-(i) seek the following information regarding NetChoice's members:

> a) The types or tiers of Membership in NetChoice, if any;
> . . .
> c) The process by which Persons become Members of NetChoice;
> . . .
> e) The application process to become a Member of NetChoice;
> f) The time period that each NetChoice Member has been associated with NetChoice in total and in any particular tier or level of membership;
> g) The role or involvement that Any Member played in the filing of the

3

>Lawsuit; and
>h) The number of Account Holders for each Member.
>i) The benefits or advantages that Membership in NetChoice conveys upon its Members.

(R. Doc. 35-5 at 7). NetChoice objected to these sub-topics on the bases that the information sought did not fall within the scope of discovery, and that the information sought was subject to First Amendment, trade secrets, and the attorney-client, joint-defense, or common-interest privileges. (R. Doc. 35-6 at 3-4).

Topic Nos. 7, 8, 18, and 19 seek the following information regarding NetChoice's members:

>7) For each Regulated Member, including, but not limited to, Meta, Nextdoor, Pinterest, Reddit, Snap Inc., X, and YouTube, the number of known Minor Users per year within the United States; the number of Minor Users for which the Regulated Member has obtained express parental consent within the United States; and the amount of revenue derived from Minor Users from 2019-2025 within the United States.
>
>8) For each Regulated Member, including, but not limited to, Meta, Nextdoor, Pinterest, Reddit, Snap Inc., X, and YouTube, the number of known Minor Users per year within Louisiana; the number of Minor Users for which the Regulated Member has obtained express parental consent within Louisiana; and the amount of revenue derived from Minor Users from 2019-2025 within Louisiana.
>
>18) For each NetChoice Member, All processes and procedures of the Algorithms used to promote or display or make available additional content for Users to access.
>
>19) For each NetChoice Member, Any Algorithm used, for Minor Users, to provide, display, select, or make content available, including whether Any Algorithm differs for adult Users and if so, how.

(R. Doc. 35-5 at 9). With respect to these topics, NetChoice objected on the bases that they were overly broad and the information sought was "not within NetChoice's knowledge, custody, possession, or control." (R. Doc. 35-6 at 5-7).

4

The Rule 30(b)(6) deposition was held on July 30, 2025. (R. Doc. 35-7, "Pl. Depo. Tr.") Prior to the deposition, NetChoice did not move for a protective order with respect to its written objections to the Rule 30(b)(6) deposition notice.

On August 5, 2025, the parties held a conference regarding the deposition testimony, but were unable to reach any resolution without court intervention. (*See* R. Doc. 35-1 at 7).

On August 7, 2025, Defendants filed the instant Motion to Compel, which challenges the sufficiency of the Rule 30(b)(6) deposition testimony. (R. Doc. 35).[1] Defendants argue that Mr. Cleland was inadequately prepared for the deposition and otherwise failed to provide testimony on various topics. Defendants seek the opportunity to retake the Rule 30(b)(6) deposition with a knowledgeable designee on Topics 2-19, the recovery of an award of costs and fees, and an order precluding NetChoice from presenting undisclosed evidence and contradicting its deposition testimony.

In opposition, NetChoice argues that Defendants are improperly seeking testimony regarding the internal, confidential, and proprietary information of its member companies. (R. Doc. 44). NetChoice argues that since at least May 19, 2025, it has informed Defendants that it is relying solely on publicly available information. NetChoice further argues that Mr. Cleland provided pertinent testimony within NetChoice's knowledge, custody, possession, and control, and that Defendants should have sought any information in the custody, possession, and control of the third-party members directedly from those members. With respect to internal membership criteria, NetChoice argues that this information is irrelevant to the First Amendment challenge to the Act and is otherwise protected from disclosure pursuant to a First Amendment privilege.

---

[1] *See* LR 26(d)(1) (allowing motion to compel to be "filed within seven days after the discovery deadline" to the extent the motion pertains "to conduct occurring during the final seven days of discovery").

5

In reply, Defendants argue that the Court should either grant their Motion to Compel by limiting NetChoice's evidence to publicly available information about its members, or require NetChoice to produce a prepared Rule 30(b)(6) deponent on Topics 2-19. (R. Doc. 48).

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of

fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

"Trial courts possess broad discretion to supervise discovery." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted). "A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). Courts also consider "(1) hardship and inequity on the moving party without a stay; (2) prejudice the non-moving party will suffer is a stay is granted; and (3) judicial economy." *See Strong ex rel. Tidewater, Inc. v. Taylor*, No. 11-392, 2013 WL 818893, at * 2 (E.D. La. Mar. 5, 2013). "A stay while a dispositive motion is pending is the exception rather than the rule." *Great Lakes Ins., S.E. v. Gray Grp. Invs., LLC*, No. 20-2795, 2021 WL 7708048, at *10 (E.D. La. May 21, 2021).

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See*, *e.g.*, *Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010

7

WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

### B. Analysis

#### 1. NetChoice's Appearance for Its Rule 30(b)(6) Deposition

"The court where the action is pending may, on motion, order sanctions if . . . a person designated under Rule 30(b)(6) . . . fails, after being served proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). "A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). The Fifth Circuit has held that where the corporate entity designates a Rule 30(b)(6) representative who "is not knowledgeable about **relevant** facts," then "the principal has failed to designate an available, knowledgeable, and readily identifiable witness," resulting in an appearance that "is, for all practical purposes, no appearance at all." *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (emphasis added) (citing *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990)); *see Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 72-73 (E.D. La. 2024) ("Courts generally recognize that Rule 30(b)(6) establishes the minimum about which the witness must be prepared to testify, not the maximum.").

8

Where a party fails to provide a knowledgeable witness, which effectively results in the failure to designate a witness for particular topics, it is subject to sanctions unless there is a pending motion for protective order as provided by Rule 26(c). *See* Fed. R. Civ. P. 37(d); *see also Omega Hosp., LLC v. Cmty. Ins. Co.*, 310 F.R.D. 319, 322 (E.D. La. 2015) ("In such a case, the court treats the failure to designate as a failure to appear for deposition," subjecting the Rule 30(b)(6) deponent to sanctions pursuant to Rule 37(d)) (citing *Resolution* Trust, 985 F.2d at 197)); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 143 (E.D. Tex. 2003) ("To satisfy Rule 37(d)'s requirement of a 'pending motion for a protective order' for each disputed deposition topic, the party filing a motion for a protective order must state why a motion for a protective order is needed for each disputed deposition topic.").

"The determination of whether information is known or reasonably available to a corporation requires a fact-specific analysis." *Goodyear Tire*, 348 F.R.D. at 75. "In conducting that fact-specific analysis, some courts have looked to the Rule 34(a) 'possession, custody or control' standard for guidance to find that a parent must produce a witness prepared to testify based on knowledge obtained from its subsidiaries and affiliates when the subsidiaries and affiliates are within its control." *Id*. (citation omitted). "Using the Rule 34 control standard, courts have held that Rule 30(b)(6) does not require one entity which is not under the control of a second entity to inquire into and testify as to the knowledge of the second entity." *Id*. (citations and internal punctuation omitted). "Other courts, however, have found that the standard applicable to Rule 30(b)(6) differs from the Rule 34 standard, holding that a parent corporation is not obligated to acquire all of the knowledge of the subsidiary on matters in which the parent was not involved." *Id*. (citations and internal punctuation omitted). "Thus, even if a Rule

9

30(b)(6) deponent has 'control' over another entity, it need not obtain information from that entity when that entity was not involved in the underlying transaction." *Id*.

In support of their motion, Defendants assert that NetChoice failed to "appear" at its Rule 30(b)(6) deposition with respect to Topic Nos. 2-19, although Defendants only discuss questions related to Topics 3(a),(c), (e)-(i), 7, 8, 18, and 19 in any level of detail. (*See* R. Doc. 35-1 at 9-14). Accordingly, the Court will limit its discussion to those topics.

Foremost, and contrary to Defendants' assertions, the record does not support a finding that Mr. Cleland was not prepared, as a general matter, to serve as Rule 30(b)(6) representative for NetChoice with respect to the foregoing topics. Mr. Cleland testified that in 30-40 hours of preparation for the deposition, he reread filings in the case, Louisiana law, and links to information cited in pleadings and supporting declarations, and spoke to Paule Taske, the Co-Director of the NetChoice Litigation Center. (Pl. Dep. Tr. 15:7-16:5; 19:2-7). Granted, Mr. Cleland initially testified that he did not review discovery or consult any internal documents on the noticed deposition topics. (Pl. Dep. Tr. 19:12-14; 20:3-10). But Mr. Cleland later testified on redirect that he, in fact, had reviewed NetChoice's discovery responses in preparation for the deposition. (Pl. Dep. Tr. 369:7-370:7). While Defendants do provide certain instances where Mr. Cleland did not have particular knowledge (such as with point of contacts with member companies) (*see* Pl. Dep. Tr. 121:19-22), there is insufficient evidence to support a finding that Mr. Cleland was so unprepared that NetChoice failed to make an appearance for its Rule 30(b)(6) deposition.

In fact, Defendants' arguments focus less on Mr. Cleland's purported lack of preparation than on NetChoice's lack of corporate knowledge regarding its member's proprietary information, including the amount of revenue derived from minor users and the member's

10

algorithms. Defendants complain that "NetChoice's corporate knowledge of its members rests solely on what the members' public websites say—nothing else." (R. Doc. 35-1 at 7) (citing Pl. Dep. Tr. 180:3-9; 28:9-17; 221:10-20; 225:2-13; 253:3-9; 256:20-257:14; 267:18-5; 320:23-321:3; 371:4-11). But this is consistent with NetChoice's repeated assertion that it does not know or have access to certain information about its members:

> In short, NetChoice does not have access to much of the information that Defendants seek, which is uniquely within the knowledge of its members. Rather, NetChoice relies on publicly available information about its members.

(R. Doc. 44 at 7). Indeed, NetChoice points out that Mr. Cleland's declaration in support of NetChoice's Motion for Preliminary Injunction "relied extensively on publicly available information." (R. Doc. 44 at 7) (citing R. Doc. 6-3). NetChoice also responded to various interrogatories and requests for production on the basis that the information sought about its members are "publicly available." (*See* R. Doc. 44-1).[2] NetChoice asserts, and Mr. Cleland testified, "that NetChoice's knowledge of various topics comes from publicly available information that members provide themselves—often on members' websites." (R. Doc. 44 at 15) (citing Pl. Dep. Tr. at 180:3-9; *see* Pl. Dep. Tr. at 28:13-17; 180:15-18; 181:15-18; 206:19-23; 216:9-15; 221:16-20; 225:9-13; 237:25-238:1; 250:1-4; 257:6-8; 268:15-17; 370:8-372:12)). Mr. Cleland reviewed that publicly available information in preparation for his deposition. (R. Doc. 44 at 15) (citing Pl. Dep. Tr. at 181:7-12, 203:10-13)). NetChoice further notes that to the extent Mr. Cleland responded "I don't know" to questions, this response was often followed up by an explanation that the information was either publicly available or solely within the possession of the member companies. (R. Doc. 44 at 15) (citing Pl. Dep. Tr. at 124:8-16; 126:12-14; 181:15-

---

[2] The instant motion does not address any issues with respect to written discovery.

18; 185:13-17; 190:12-16; 197:14-17; 204:8-205:6; 206:19-23; 216:9-15; 228:22-229:2; 250:1-4; 277:2-3; 290:13-14; 294:9-10; 325:1)).

Even if the Court applied the Rule 34(a) 'possession, custody or control' standard, Defendants have not established that the information sought in Topic Nos. 7, 8, 18, and 19 is known by NetChoice or reasonably available to it. NetChoice has specifically objected to providing testimony on these topics because the information sought is not within its "knowledge, custody, possession, or control." (R. Doc. 35-6 at 5-7). Defendants do not now present any arguments in support of a finding that NetChoice has "possession, custody, or control" of the information sought. *See Goodyear Tire*, 348 F.R.D. at 68 ("The burden is on the party seeking discovery to show that the other party has control over the material sought."). Defendants have not otherwise identified any separate and independent duty placed upon a trade association to investigate and educate itself with respect to information in the possession, custody, or control of its members.

Accordingly, the Court finds no basis for concluding that NetChoice effectively failed to make an appearance at its Rule 30(b)(6) deposition based upon NetChoice's lack of knowledge of its members information response to Topic Nos. 7, 8, 18, and 19.[3] Mr. Cleland testified that NetChoice did not make any efforts to contact the member entities to obtain the requested information, and that NetChoice does not know the number of minor users or specifics regarding the member's algorithms, particularly how the content of the programing differs with respect to minors and adult users, other than the information placed on the members' websites. (Pl. Dep. Tr. 29:4-30:17; 176:10-180-9; 229:9-232:7). Having testified consistent with its original

---

[3] The Court will discuss Topic Nos. 3(a),(c), (e)-(i) below. The issue with those topics are not whether Mr. Cleland was prepared to testify on them. Instead, the issue is whether NetChoice's counsel properly directed Mr. Cleland not to answer specific questions that fall within the scope of those topics.

objections, NetChoice did not withhold any information or testimony that would have required a protective order prior to the deposition.

There is no dispute, however, that this information is relevant and otherwise falls within the scope of discovery. In fact, NetChoice represents that it "provided the contact information for the outside counsel representing certain of its member companies with the understanding that Defendants might seek third-party discovery on those members." (R. Doc. 44 at 6). It appears that Defendants did not serve any Rule 45 subpoenas on NetChoice's member companies.

NetChoice has made a First Amendment challenge to the Act's provisions "as applied" to its members and their services. (*See* R. Doc. 1 at 19). That NetChoice was unable to provide information at its deposition that is relevant to this "as-applied" First Amendment challenge raises the issue of whether NetChoice has associational standing to raise an "as applied" First Amendment challenge on behalf of its members in the first place. *See NetChoice v. Bonta*, 761 F. Supp. 3d 1202, 1230-31 (N.D. Cal. 2024) (finding that NetChoice lacked associational standing to raise as-applied challenges to state law's "personalized feed provisions" because a challenge to those provisions would "require deep factual inquiries into how a particular media feed works," *i.e.*, would require "the participation of individual members in the lawsuit."); *but see NetChoice, LLC v. Fitch*, No. 24-170, 2025 WL 1709668, at *4-5 (S.D. Miss. June 18, 2025) (NetChoice established associational standing with respect to "as-applied First Amendment claims" in amended pleading by presenting evidence that the challenged state act covered at least eight members, and submitting member declarations by three members discussing how the act applies to their respective services).

That said, there is no pending motion raising the issue of associational standing. Whether and to what extent NetChoice has associational standing to raise the claims in this action is not at issue in the instant motion.

## 2. NetChoice's Objections to Topic Nos. 3(a), (c), (e)-(i)

With respect to questioning related to Topic Nos. 3(a),(c), (e)-(i), Plaintiff's counsel specifically directed Mr. Cleland not to respond based upon a First Amendment privilege and relevancy grounds. "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). NetChoice did not file a motion to terminate or limit the deposition pursuant to Rule 30(d)(3), and did not obtain a protective order prior to the deposition. Accordingly, this instruction not to answer questions would only be proper to the extent "necessary to preserve a privilege." Fed. R. Civ. P. 30(c)(2).

The specific questions at issue concern membership fees and tiers, as well as the positions held by member companies with respect to this lawsuit:

- [D]o members pay a uniform amount each year?
- Do members pay different amounts?
- Are there different tiers of membership?
- Is NetChoice's funding generated solely by member fees?
- Do members pay more than $50,000 annually?
- To your knowledge, have there been instances where NetChoice members have disagreed as to certain public policy matters in which NetChoice may become involved?
- Do you know whether any NetChoice members disagree with the position NetChoice is taking in this litigation?

(Pl. Dep. Tr. 40:9-43:8; 43:24-45:5; 48:4-48:13; 49:12-50:12).[4] These questions all appear to fall within the scope of Topic Nos. 3(a),(c), (e)-(i).

---

[4] Plaintiff's counsel also directed Mr. Cleland not to disclose privileged information in response to the questions: "Do you know why you were testifying as a fact witness but not a corporate representative in that matter but have

As a general matter, the Court agrees with NetChoice that the relevance of the information sought by the foregoing questions is minimal at best. The party filing a motion to compel bears the burden of demonstrating the relevancy of the information sought. *See Mitchell v. Diamond Plastics Corp.*, No. 18-919, 2020 WL 4006666, at *4 (M.D. La. July 15, 2020). Defendants have made no specific effort to demonstrate the relevance of Topic Nos. 3(a),(c), (e)-(i) – or the specific questions at issue above – with respect to the claims or defenses raised in this lawsuit. That said, NetChoice should have sought a protective order with respect to these disputed topics prior to the deposition, particularly given the instruction not to answer based on relevancy.

Nevertheless, defense counsel also objected based on the First Amendment privilege. Defendants do not address this privilege directly in their Motion to Compel. Instead, Defendants obliquely challenge NetChoice's assertions of First Amendment privilege as an improper tactic to avoid preparing Mr. Cleland on providing testimony on the underlying "facts" not protected by the asserted privilege. (*See* R. Doc. 35-1 at 5-6). Defendants further argue that because NetChoice produced a privilege log with respect to certain withheld documents and communications, it necessarily has access to non-privileged "facts" that should have been disclosed at the deposition. (R. Doc. 35-1 at 11-12). The underlying "facts" sought by Defendants includes information within the scope of Topic Nos. 7, 8, 18, and 19 – in response to which no First Amendment privilege was lodged. The Court finds no basis for imputing knowledge of non-privileged factual information on NetChoice with respect to its members

---

been designated as a corporate representative for purposes of the Louisiana law?", "Tell me know you prepared for today's deposition," and "Did you draft this declaration?" (Pl. Dep. Tr. 12:17-13:3; 14:17-25; 53:15-54:3). These objections do not appear to be in dispute.

15

simply because NetChoice produced a privilege log regarding written discovery that is not at issue in this motion.[5]

The Court also rejects the Defendants' argument that NetChoice "waived" it First Amendment privilege because it failed to seek a protective order to protected trade secret or other confidential research, development, or commercial information pursuant to Rule 26(c)(1)(G). Defendants present no decisional law equating the assertion of a First Amendment privilege with an assertion of trade secrets. Furthermore, as discussed above, an attorney may instruct a deponent to not answer a question at a deposition "when necessary to preserve a privilege." Fed. R. Civ. P. 30(c)(2). The rule does not require a party to obtain a protective order prior to asserting a privilege in response to deposition questions. NetChoice raised the First Amendment privilege in written objections prior to the Rule 30(b)(6) deposition and then its counsel instructed Mr. Cleland not to provide testimony protected by that privilege.

The pertinent issue is whether NetChoice's First Amendment privilege objections – and its counsel's direction to Mr. Cleland not to answer specific questions based on those objections

---

[5] The Court notes that the privilege log appears to be inadequate because it does not provide sufficient information for Defendants to challenge the reasons why the documents and information were withheld from written discovery requests. (*See* R. Doc. 35-8). "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed-- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981)). In addition, this Court's Local Rule 26(c) provides the following: "A party withholding information claimed privileged or otherwise protected must submit a privilege log that contains at least the following information: name of the document, electronically stored information, or tangible things; description of the document, electronically stored information, or tangible thing, which description must include each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege." LR 26(c); *see also Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009) ("[A] privilege log . . . should not only identify the date, the author, and all recipients of each document listed therein, but should also describe the document's subject matter, the purpose for its production, and a specific explanation of why the document is privileged or immune from discovery.") (quoting *Peacock v. Merrill*, No. 08-01, 2008 WL 687195, at *3 (M.D. La. Mar. 10, 2008)). Regardless, Defendants did not file a timely motion challenging the adequacy of NetChoice's responses to written discovery.

– are valid. Here are NetChoice's First Amendment privilege objection to Topic Nos. 3(a),(c), (e)-(i) in full:

> NetChoice also objects on First Amendment grounds. Information covered by these Topics would potentially reveal information about NetChoice's members and other NetChoice supporters. The information sought by these Topics would also potentially implicate NetChoice's and other third-parties' First Amendment rights, associational privacy, free speech, and the right to petition the government. *See Am. for Prosperity Foundation v. Banta,* 141 S. Ct. 2373, 2382 (2021); *NAACP v. State of Ala. ex rel. Patterson,* 357 U.S. 449, 460-66 (1958). Subjecting this information to disclosure could lead to severe harassment, intimidation, or threats and a chilling effect on speech.
>
> The potential chilling effect of these Topics cannot be overstated. If NetChoice's internal communications and strategies are subject to disclosure, it would significantly impair its ability to freely associate, deliberate, and advocate on behalf of its members.

(R. Doc. 35-6 at 3-4).[6] Having reviewed NetChoice's First Amendment privilege objections during the deposition, and considering NetChoice's prior objections to the deposition testimony, the Court finds that NetChoice has sufficient asserted its grounds for claiming a First Amendment privilege. *See Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 317 (N.D. Fla. 2021) ("An objection that information is protected by a privilege [in response to questioning at a deposition] . . . may require a little more explanation to satisfy Rule 26(b)(5)(A). But there certainly is no need for attorneys to argue the merits of an objection during a deposition. That will only prolong the deposition and possibly will taint the testimony of the deponent.").

"The First Amendment prohibits government from 'abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'" *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 605-06

---

[6] NetChoice also provided written objections to these sub-topics based on relevancy, proprietary and confidential information, and the attorney-client, joint-defense, and common-interest privileges. At the deposition, Plaintiff's counsel directed Mr. Cleland not to respond to the questions at issue solely on relevancy and First Amendment privilege grounds. Accordingly, the Court has limited its discussion to those objections actually raised at the deposition.

17

(2021). The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." *Id*. (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). Consistent with the foregoing, the Supreme Court has held that the State of Alabama could not compel the NAACP to disclose in discovery a membership list that included the identities of its rank-and-file members. *NAACP v. Alabama ex rel Patterson,* 357 U.S. 449 (1958); *see also Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) (California regulation requiring charitable organizations to disclose the identities of their major donors violated First Amendment right of association). "The Supreme Court explained that the First Amendment associational privilege applies when a discovery order 'entail[s] the likelihood of a substantial restraint upon the . . . right to freedom of association.'" *Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 20-973, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022) (quoting *NAACP*, 357 US. at 462); *see also Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 631-32 (5th Cir. 1980) (reversing order dismissing case based on organization's refusal to release the names of its members who were not publicly known); *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976) (reversing district court decision to dismiss case based on association's refusal to disclose its membership information).

The First Amendment privilege based on the right to associate is a qualified privilege. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("The right to associate for expressive purposes is not . . . absolute."). "To determine whether withholding is appropriate, courts apply a burden-shifting test that 'balances the interest in disclosure against the burden imposed on associational rights.'" *X Corp. v. Media Matters for Am.*, No. 23-01175, 2024 WL 4416887, at *3 (N.D. Tex. Sept. 27, 2024) (quoting *Young Conservatives*, 2022 WL 2901007, at *3). "Although the Fifth Circuit has not adopted this specific balancing test employed in other

circuits, it has suggested that a balancing test is appropriate to analyze the qualified privilege." *X Corp.*, 2024 WL 4416887, at *3 (citing *Hastings*, 615 F.2d at 631-32; *Whole Woman's Health v. Smith*, 896 F.3d 362, 372-74 (5th Cir. 2018)). "If the party asserting the privilege makes a *prima facie* showing that it applies, then the burden shifts to the party seeking the information to demonstrate a compelling need for the information and that the information cannot be obtained from other sources." *Bright Response, LLC v. Google Inc.*, No. 07-371, 2009 WL 10741629, at *1 (E.D. Tex. Sept. 29, 2009).

Here, the Court finds that NetChoice has made a *prima facie* showing that the information sought by Topic Nos. 3(a),(c), (e)-(i) – in addition to having minimal relevance to the claims and defenses in this litigation – is protected by the First Amendment right of association. If disclosed, the information sought (including membership fees, membership tiers, and member's specific positions in this litigation) would potentially implicate its First Amendment associational rights, having potential chilling effects such as "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry*, 591 F.3d at 1160.

After a p*rima facie* showing is made, "the burden then shifts to the party seeking discovery to show 'an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent effect which . . . these disclosures may well have." *X Corp.*, 2024 WL 4416887 (quoting *Hastings*, 615 F.2d at 632 (quoting *NAACP*, 357 U.S. at 463)). Defendants make no attempt to demonstrate any such interest in the minimally relevant information sought pursuant to Topic Nos. 3(a),(c), (e)-(i). Accordingly, the Court finds no basis for compelling any further

Rule 30(b)(6) deposition testimony on those topics based on Defendants' arguments raised in support of the instant Motion to Compel.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Compel (R. Doc. 35) is **DENIED.** The parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on September 16, 2025.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**