**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| NETCHOICE, | |
| PLAINTIFF, | |
| v. | Civil Action No. 3:25-cv-231 |
| LIZ MURRILL, et al., | Judge: JWD - RLB |
| DEFENDANTS. | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR REVIEW OF**
**THE MAGISTRATE JUDGE'S ORDER (ECF NO. 85)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

STANDARD OF REVIEW ............................................................................................... 8

ARGUMENT ................................................................................................................ 8

I.    THE COURT SHOULD MODIFY THE MAGISTRATE JUDGE'S ORDER AND
      AWARD DEFENDANTS REASONABLE FEES AND COSTS................................................ 8

CONCLUSION............................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Blackmon v. Bracken Constr. Co.*,
No. CV 18-00142-BAJ-SDJ, 2021 WL 3824819 (M.D. La. Aug. 26, 2021) .............. 8

*Boland Marine & Mfg. Co. v. Rihner*,
41 F.3d 997 (5th Cir. 1995) ...................................................................................... 7

*Dukuray v. Experian Info. Sols.*,
23 Civ. 9043 (AT) (GS), 2024 WL 3812259 (S.D.N.Y. July 26, 2024)...................... 9

*In re TransTexas Gas Corp.*,
597 F.3d 298 (5th Cir. 2010) .................................................................................... 8

*Johnson v. Dunn*,
No. 2:21-CV-1701-AMM, 2025 WL 2086116 (N.D. Ala. July 23, 2025) .................. 9

*Kasso v. Police Officers' Fed'n of Minneapolis*,
No. 23-CV-2777 (KMM/DLM), 2025 WL 2963375 (D. Minn. Oct. 21, 2025).......... 12

*Kohls v. Ellison*,
No. 24-CV-3754 (LMP/DLM), 2025 WL 66514 (D. Minn. Jan. 10, 2025)... 1, 7, 9, 12

*Kruse v. Karlen*,
692 S.W.3d 43 (Mo. Ct. App. 2024)........................................................................ 10

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
675 F.3d 433 (5th Cir. 2012) .................................................................................. 12

*Mata v. Avianca, Inc.*,
678 F. Supp. 3d 443 (S.D.N.Y. 2023) ..................................................................... 10

*Morgan v. Cmty. Against Violence*,
No. 23-cv-353-WPJ/JMR, 2023 WL 6976510 (D.N.M. Oct. 23, 2023) ..................... 9

*Park v. Kim*,
91 F.4th 610 (2d Cir. 2024) .................................................................................... 10

**Other Authorities**

Am. Psychol. Ass'n, *Review of General Psychology*, t.ly/7__g6 (last visited Feb. 16, 2026) ...................................................................................................................... 3

Ferguson, Christopher J., Faculty Profile, Stetson Univ., t.ly/l8DyY (last visited Feb. 16, 2026) .......................................................................................................... 3

Hon. Xavier Rodriguez et al., "Recurring Discovery and Evidence Issues in Employment Cases," *The American Law Institute Continuing Legal Education Course Material*, CH201 ALI-CLE 927 (July 24, 2025)......................................... 11

Jacquelyn Nesi et al., *Social Media Use and Self-Injurious Thoughts and Behaviors: A Systematic Review and Meta-Analysis*, 87 Clin. Psychol. Rev. 102038 (2021), t.ly/dNosR ............................................................................................................... 6

iii

Krista Chavez, *AI's Transformative Power: A Revolution in Medical Imaging*, NetChoice (May 20, 2025), t.ly/jBvda ................................................................... 11

Michael P. Grosz et al., *A Meta-Analytic Review of the Associations of Personality, Intelligence, and Physical Size with Social Status*, 150 Psychol. Bull. 253 (Mar. 2024), https://doi.org/10.1037/bul0000416 ...................................................... 5

Richard T. Liu, Profile, Massachusetts General Hospital Researcher Directory, t.ly/6DMR6 (last visited Feb. 16, 2026) .................................................................. 6

Tyler J. Brewster, *Egregious Errors in Expert Evidence: Ethical Oversight for Experts Who Use Generative AI*, La. L. Rev. Lagniappe, t.ly/pcqbe (May 2025) ... 10

W. Taylor Farr, "Artificial Intelligence 101: The Good, the Bad, and the (Un)ethical," *Arkansas Lawyer*, 60-WTR ARLAW 12 (Winter 2025) ...................... 11

Zoey Foster, *AI's Transformative Power: One Voice, Countless Lives Changed*, NetChoice (Aug. 7, 2025), t.ly/rRPqU ...................................................................... 11

Zoey Foster, *The Transformative Power of AI: A Roadmap for Safer, Smarter Commutes*, NetChoice (Dec. 16, 2024), t.ly/jpUMl .................................................. 11

**Rules**

Fed. R. Civ. P. 72(a) ................................................................................................... 8

## INTRODUCTION

NetChoice served an expert report citing 17 sources that do not exist and attributing 12 quotations to authors who never wrote them. The Magistrate Judge excluded the expert testimony, finding that "*every* quotation present in the Report was fabricated, as were the articles present in its bibliography." ECF No. 85 at 4 (emphasis added). Yet the Magistrate Judge declined to award Defendants any fees or costs for uncovering and documenting these fabrications—even though NetChoice withdrew the putative expert only after being caught and, worse, without apology or accountability. *See* ECF No. 51. That decision is clearly erroneous, contrary to law, and invites future abuse.

"The consequences of citing fake, AI-generated sources … are steep" even "for an expert offering testimony to assist the Court under penalty of perjury." *Kohls v. Ellison*, No. 24-CV-3754 (LMP/DLM), 2025 WL 66514, at *5 (D. Minn. Jan. 10, 2025). Such AI fabrications "impose[] many harms, including 'wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few).'" *Id.* (citation omitted). Here, Defendants expended thousands on verification efforts, expert compensation, and detailed briefing. ECF No. 42-6. Yet, as of now, NetChoice bears no consequences. The Magistrate Judge offered three reasons for this result, but each contradicts controlling precedent, undermines ethical standards governing expert testimony, and creates a perverse incentive.

1

Defendants thus respectfully request that this Court modify the Magistrate Judge's order and impose consequences steep enough to ensure that this misconduct is never repeated in this Court—by NetChoice, its counsel, or anyone else.

## BACKGROUND

Less than two months before summary judgment briefing began, NetChoice's counsel served on Defendants its sole expert's report, along with a package of articles upon which he purportedly relied. ECF No. 42-4. In that report, Dr. Anthony Bean "declare[d] under penalty of perjury that the following is true and correct." Ex. A (Bean Decl.) at A1. But when Defendants' expert Dr. Jean Twenge attempted to trace Dr. Bean's work in preparing her rebuttal, she discovered fabricated quotations from articles that do not exist—"the telltale signs of AI hallucinations." ECF No. 42-1 (Defs'.Mem.) at 1. Recognizing the gravity of such an accusation, Defendants directed Dr. Twenge to verify the citations and quotations do not exist with exacting care while counsel independently reviewed and documented every alleged fabrication. *See* ECF No. 42-6 (Twenge Decl.). The results were damning.

Dr. Bean's report cites 17 non-existent sources and attributes 12 fabricated quotations to real authors. Defendants accordingly moved to exclude his testimony and requested reasonable fees and costs for exposing the AI-fabricated citations and quotations. ECF No. 42. Consistent with Dr. Twenge's and counsel's thorough review, the memorandum in support addressed each of those 29 distinct fabrications independently. *See* Defs'.Mem.8–25. Two examples illustrate the pattern:

**1. "Ferguson et al. (2024)."** Dr. Bean discusses "Ferguson et al. (2024)" in Subpart B of his report, listing it in his References as:

> Ferguson, C. J., et al. (2024). Social media use and mental health: A comprehensive meta-analysis. *Review of General Psychology*. Advance online publication. https://doi.org/10.1037/gen0000536

He then attributes to that work (*i.e.*, "[i]n their words") one direct quotation:

> *"While some effects are statistically non-zero, they are so small as to be functionally meaningless in the real world."*

Bean Decl. at B2. Mundane enough, so it would seem.

To be sure, Christopher J. Ferguson is a psychology professor at Stetson University. *See* Ferguson, Christopher J., Faculty Profile, Stetson Univ., t.ly/l8DyY (last visited Feb. 16, 2026). And the *Review of General Psychology* is a peer reviewed journal published by the American Psychological Association. *See* Am. Psychol. Ass'n, *Review of General Psychology*, t.ly/7__g6 (last visited Feb. 16, 2026). But neither has published an article entitled "Social media use and mental health: A comprehensive meta-analysis." And the DOI link leads nowhere.



That alone is troubling. But it gets worse. NetChoice produced three actual 2024 articles by Dr. Ferguson: (1) "Do Social Media Experiments Prove a Link With Mental Health: A Methodological and Meta-Analytic Review," *Psychology of Popular*

*Media* (ECF No. 42-7), (2) "Longitudinal Associations Between Social Media Use and Mental Health Outcomes in Sample of Irish Youth: A Brief Report," *Communication Reports* (ECF No. 42-8), and (3) "There Is No Evidence That Time Spent on Social Media Is Correlated With Adolescent Mental Health Problems: Findings From a Meta-analysis," *Professional Psychology: Research and Practice* (ECF No. 42-9). The general thrust of *these* articles may align with Dr. Bean's substantive claims. That might suggest an honest mistake—if the quotation were real. It is not. The words "non-zero," "real world," or "functionally meaningless" appear nowhere in these articles. *See* ECF No. 42-7, 42-8, 42-9.

**2. "Liu et al., 2024" and "Liu & Baumeister (2024)."** Consider also the Liu citations. Dr. Bean relies on two sources he calls "Liu et al., 2024" and "Liu & Baumeister (2024)." *See* Bean Decl. at B4–B7, E, K2, L2. In his "References," they appear as:

> Liu, D., et al. (2024). Thirty-year trends in adolescent anxiety and depression: A cross-national review. *International Journal of Adolescent Mental Health, 38*(1), 1-12.

> Liu, R. T., & Baumeister, R. F. (2024). The effects of digital media use on mental health: A meta-analytic review. *Psychological Bulletin.*
>
> https://doi.org/10.1037/bul0000416

*See* Bean Decl. at N.

For starters, The *International Journal of Adolescent Mental Health* does not exist; the *International Journal of Adolescent **Medicine and** Health* does. That journal has yet to publish a 38th volume—2025 was its 37th. *See* 37 Int'l J. of

Adolescent Med. & Health 3 (2025), t.ly/N7zhI (last visited Feb. 16, 2026). Nor has Dr. Dong Liu authored any article remotely matching Dr. Bean's citation.

The "Thirty-year" title is another bad tell. NetChoice produced two Liu articles—one by Dr. *Dong* Liu (co-authored with a Dr. Baumeister), *see* ECF No. 42-15, and another by Dr. *Xiaohan* Liu, entitled "Thirty-year trends of anxiety disorders among adolescents based on the 2019 Global Burden of Diseases Study," and published in *General Psychiatry*, *see* ECF No. 42-16. Dr. Bean's citation lifts the title from Dr. *Xiaohan* Liu's article, attributes it to Dr. *Dong Liu*, and places it in a non-existent journal. Dr. Bean then attributes to Dr. Dong Liu and his co-authors (or perhaps to Dr. Xiaohan Liu?) a direct quotation:

> *"Contrary to popular assumptions, adolescent anxiety showed a consistent global decline across three decades, even as smartphone ownership and internet use rapidly increased."*

Bean Decl. at E4. That quote does not appear in Dr. Dong Liu's or Dr. Xiaohan Liu's actual work. *See* ECF Nos. 42-15, 42-16.

As for "R.T. Liu," the DOI hyperlink leads to an unrelated *Psychological Bulletin* article "investigat[ing] who attains social status in face-to-face groups." Michael P. Grosz et al., *A Meta-Analytic Review of the Associations of Personality, Intelligence, and Physical Size with Social Status*, 150 Psychol. Bull. 253 (Mar. 2024), https://doi.org/10.1037/bul0000416. The author pairing is also fiction. "R.T. Liu" (which appears to stand for *Richard T.* Liu) is an associate professor at Harvard Medical School, who has never co-authored with Dr. Baumeister. *See* Richard T. Liu,

Profile, Massachusetts General Hospital Researcher Directory, t.ly/6DMR6 (last visited Feb. 16, 2026).

Dr. Bean also inverts Dr. Richard T. Liu's actual findings. Dr. Bean claims Dr. Liu concluded (at L2) that "the average correlations between digital media use and mental health outcomes ... lack any practical clinical significance." But Dr. Liu's systematic review and meta-analysis found the opposite: "The majority of studies identified focused on cyber victimization, and results suggested positive associations with all [self-injurious thoughts and behavior]s, with the association between cyber victimization and suicidal ideation stronger for adolescents than adults." Jacquelyn Nesi et al., *Social Media Use and Self-Injurious Thoughts and Behaviors: A Systematic Review and Meta-Analysis*, 87 Clin. Psychol. Rev. 102038 (2021), t.ly/dNosR. His "findings highlight the utility of examining specific social media behaviors and experiences" and "point to the need for more research in this area." *Id.*

The quotation Dr. Bean attributes to Dr. Richard T. Lau and Dr. Baumeister is also fabricated:

> "Such a small effect is indistinguishable from random noise and does not justify public concern or restrictive interventions."

Bean Decl. at B5. And it appears in neither Dr. Dong Liu's nor Dr. Xiaohan Liu's article. *See* ECF Nos. 42-15, 42-16.

Faced with this evidence, NetChoice could have acknowledged submitting a largely AI-hallucinated expert report under penalty of perjury, apologized, and moved on. Regrettably, it did not. *See* ECF No. 51. Instead, NetChoice chose indignation. It

6

withdrew Dr. Bean only after being caught, blamed Defendants for seeking relief, and offered an implausible story that avoids the actual problems with Dr. Bean's report. But not once does NetChoice dispute that the quotations in the report were contrived or that the citations were false. All NetChoice could muster: "Dr. Bean's report did contain errors." ECF No. 51 at 3.

Notwithstanding NetChoice's attempt to dodge accountability, the Magistrate Judge declined to "give Dr. Bean an unearned escape-hatch when questioned in the future about prior exclusions." ECF No. 85 at 4. "It is clear," the Magistrate Judge found, "that every quotation present in the Report was fabricated, as were the articles present in its bibliography (four of which were never referenced in the Report)." *Id.* Dr. Bean's methods therefore could "not be found to be reliable … because his 'citation to fake, [possibly] AI-generated sources in his [Report] shatters his credibility with this Court [and his Report]'s errors undermine its competence and credibility[.]'" *Id.* at 5 (quoting *Kohls*, 2025 WL 66514, at *4–5). The Magistrate Judge accordingly excluded Dr. Bean's testimony.

The Magistrate Judge erred, however, in declining to sanction NetChoice by awarding Defendants reasonable fees and costs. While correctly recognizing the Court's inherent power to sanction parties whose "deplorable conduct" "defile[s]" the "temple of justice," *id.* at 5–6 (quoting *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995)), the Magistrate Judge declined to invoke that standard because (1) no other court had "sanction[ed] a party for its attorney failing to check an *expert's* report for AI use"; (2) "Dr. Twenge took great lengths to discern whether

7

Dr. Bean's citations were correct, lengths no attorney has ever been required to take"; and (3) "Plaintiff's counsel removed Dr. Bean from the case as soon as the mistake was made known," *id.* at 6. These reasons contradict controlling precedent and undermine ethical standards, all while excusing a party that has yet to express any remorse. The decision should be modified to impose a deterrent sanction.

## STANDARD OF REVIEW

When "review[ing] decisions on nondispositive motions by the magistrate judge," a district court must "'modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Blackmon v. Bracken Constr. Co.*, No. CV 18-00142-BAJ-SDJ, 2021 WL 3824819, at *1 (M.D. La. Aug. 26, 2021) (quoting Fed. R. Civ. P. 72(a)). An order is "contrary to law … if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* And an order is clearly erroneous if "on the entire evidence the court is left with a definite and firm conviction that a mistake has been committed." *Id.* (citation omitted); *see In re TransTexas Gas Corp.*, 597 F.3d 298, 304 (5th Cir. 2010) ("review [of] the record as a whole and not just the evidence supporting the finding" required for clear error).

## ARGUMENT

## I. THE COURT SHOULD MODIFY THE MAGISTRATE JUDGE'S ORDER AND AWARD DEFENDANTS REASONABLE FEES AND COSTS.

NetChoice served an expert report with "every quotation present in th[at] Report … fabricated." ECF No. 85 at 4. That decision left Defendants out thousands of dollars compensating their expert and drafting the underlying motion. *See* ECF No. 42-6. What would have spared those costs was NetChoice's counsel performing

8

"[a] cursory comparison between Dr. Bean's report and the disclosed original sources—or just *reading* Dr. Bean's report—before serving it." ECF No. 53 at 5. NetChoice and its counsel are therefore no more worthy of "an unearned escape-hatch" than Dr. Bean. ECF No. 85 at 4.

Courts impose "steep" consequences for "citing fake, AI-generated sources" even "for an expert offering testimony to assist the Court under penalty of perjury." *Kohls*, 2025 WL 66514, at *5 (collecting cases). Such conduct "imposes many harms, including 'wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few).'" *Id.* (quoting *Morgan v. Cmty. Against Violence*, No. 23-cv-353-WPJ/JMR, 2023 WL 6976510, at *8 (D.N.M. Oct. 23, 2023)). Even when lawyers "accept responsibility and apologize profusely, much damage is done." *Johnson v. Dunn*, No. 2:21-CV-1701-AMM, 2025 WL 2086116, at *11 (N.D. Ala. July 23, 2025). "The opposing party expends resources identifying and exposing the fabrication; the court spends time reviewing materials, holding hearings, deliberating about sanctions, and explaining its ruling; the substance of the case is delayed; and public confidence about the trustworthiness of legal proceedings may be diminished." *Id.*

Courts "do not, and should not, 'make allowances for a [party] who cites to fake, nonexistent, misleading authorities'—particularly in a document submitted under penalty of perjury." *Kohls*, 2025 WL 66514, at *5 (quoting *Dukuray v. Experian Info. Sols.*, 23 Civ. 9043 (AT) (GS), 2024 WL 3812259, at *11 (S.D.N.Y. July 26, 2024)). The Court has ample authority to do so—under its inherent authority, its power to police

9

discovery abuses, and, if it issues a show-cause order, Rule 11. *E.g.*, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023) (imposing a $5,000 fine); *Park v. Kim*, 91 F.4th 610, 616 (2d Cir. 2024) (referring to court's "Grievance Panel … for further investigation"); *cf. Kruse v. Karlen*, 692 S.W.3d 43, 54 (Mo. Ct. App. 2024), *reh'g and/or transfer denied* (Apr. 9, 2024) (imposing $10,000 in "appellate attorneys' fees").

To be sure, Defendants "defer to the Court's sound judgment in fashioning the sanction needed to ensure accountability and deterrence." ECF No. 53 at 7. But the Magistrate Judge's decision to impose *no* sanction sends the wrong message: Parties may submit egregiously fabricated expert reports, force opponents to expend resources navigating those fabrications, then escape accountability by withdrawing when caught. That cannot be the rule. Yet the Magistrate Judge offered three reasons for this result. Each contradicts controlling precedent and eviscerates the ethical standards that govern expert testimony.

*First*, the Magistrate Judge found "no case where a court has used its inherent power to sanction a party for its attorney failing to check an *expert's* report for AI use." ECF No. 85 at 6. But the absence of precedent cuts *against* NetChoice, not in its favor. Without sanctions, "improper generative AI use by lawyer-retained experts may be flying under the radar *because of* a lack of attorney discipline for such misconduct." Tyler J. Brewster, *Egregious Errors in Expert Evidence: Ethical Oversight for Experts Who Use Generative AI*, La. L. Rev. Lagniappe, t.ly/pcqbe (May 2025) (emphasis added). And perhaps because of that lack of discipline, the trend of

such abuse is only growing. *See* Hon. Xavier Rodriguez et al., "Recurring Discovery and Evidence Issues in Employment Cases," *The American Law Institute Continuing Legal Education Course Material*, CH201 ALI-CLE 927 (July 24, 2025) (highlighting "Experts' Use of AI" as an area of growing concern). The relative novelty of NetChoice's misconduct thus demands deterrence, not leniency.

NetChoice and its counsel, moreover, are singularly ill-positioned to invoke AI's novelty as a shield. NetChoice champions AI, publicly touting "AI's Transformative Power."[1] An organization that promotes AI's benefits cannot credibly plead ignorance of its widely documented risks, including hallucinations. Even before *Kohl*, "Model Rule 5.3(b) impose[d] a duty on lawyers with direct supervisory authority over a nonlawyer to make 'reasonable efforts to ensure that' the nonlawyer's conduct conforms with the professional obligations of the lawyer." ABA Formal Op. 512, at 11 (July 29, 2024) (extending the rule to AI). It follows that "attorneys may now have an obligation to double-check that their expert witnesses are not relying on nonexistent GenAI-created research articles or materials." W. Taylor Farr, "Artificial Intelligence 101: The Good, the Bad, and the (Un)ethical," *Arkansas Lawyer*, 60-WTR ARLAW 12 (Winter 2025). NetChoice and its counsel failed that obligation.

*Second*, the Magistrate Judge found that "Dr. Twenge took great lengths to discern whether Dr. Bean's citations were correct." ECF No. 85 at 6. That also cuts

---

[1] *See* Zoey Foster, *AI's Transformative Power: One Voice, Countless Lives Changed*, NetChoice (Aug. 7, 2025), t.ly/rRPqU; Krista Chavez, *AI's Transformative Power: A Revolution in Medical Imaging*, NetChoice (May 20, 2025), t.ly/jBvda; Zoey Foster, *The Transformative Power of AI: A Roadmap for Safer, Smarter Commutes*, NetChoice (Dec. 16, 2024), t.ly/jpUMl.

the other way. Her "great lengths" were necessary only because the fabrications were pervasive—17 sources, 12 quotations, all false. *See* ECF No. 42-6. Neither the pervasiveness of the fabrications nor Defendants' thorough verification and documentation of them, *see* Defs'.Mem.8–25, should somehow favor NetChoice.[2]

*Third*, the Magistrate Judge found it mitigating that NetChoice's "counsel removed Dr. Bean from the case as soon as the mistake was made known." ECF No. 85 at 6. Respectfully, serving an AI-fabricated expert report and then yanking it when caught does not erase the misconduct, or the costs it imposed. Under the Court's inherent authority "fees may be warranted where [the Court] find[s] conduct to be in bad faith, fraudulent, unreasonable, or otherwise deserving of sanction." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 675 F.3d 433, 440 (5th Cir. 2012). And it is difficult to envision conduct more deserving of a sanction than "sullying the reputation of the judiciary." *Kasso v. Police Officers' Fed'n of Minneapolis*, No. 23-CV-2777 (KMM/DLM), 2025 WL 2963375, at *8 (D. Minn. Oct. 21, 2025); *accord Kohls*, 2025 WL 66514, at *5 ("reputational harms to the legal system"). Nothing about NetChoice's pulling Dr. Bean only after being caught cures that fundamental reputational damage.

---

[2] To the extent the Magistrate Judge was suggesting that Dr. Twenge's efforts were disproportionate to how obvious the fabrications are, that, too, favors a deterrent sanction. If the fabrications were obvious, NetChoice's counsel should have found them with "[a] cursory comparison between Dr. Bean's report and the disclosed original sources—or just *reading* Dr. Bean's report." ECF No. 53 at 5.

\*     \*     \*

NetChoice served an expert report with "every quotation present in th[at] Report … fabricated." ECF No. 85 at 4. NetChoice—not Defendants, not the courts—should bear the steep consequence of those actions. Because the Magistrate Judge's decision shifts those consequences onto everyone but NetChoice, the Court should modify the order to apportion the fault where it belongs.

## CONCLUSION

The Court should modify the Magistrate Judge's Order (ECF No. 85) and award Defendants reasonable fees and costs.

Dated: February 17, 2026            Respectfully submitted,

                                    ELIZABETH B. MURRILL
                                    Attorney General


                                     /s/ *Zachary Faircloth*
                                    ZACHARY FAIRCLOTH (LA 39875)
                                     Principal Deputy Solicitor General
                                    OFFICE OF THE LOUISIANA ATTORNEY GENERAL
                                    1885 North Third Street
                                    Baton Rouge, LA 70802
                                    Telephone:  (225) 421-4088
                                    Facsimile:   (225) 326-6795
                                    FairclothZ@ag.louisiana.gov

                                    *Counsel for Defendants*

14

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Zachary Faircloth*
ZACHARY FAIRCLOTH (LA 39875)